**KENTUCKY FARM BUREAU MUTUAL IN-SURANCE COMPANY, Appellant,**

v.

**J. D. KITCHEN, Appellee.**

Court of Appeals of Kentucky.

Nov. 5, 1965.

H. Rupert, Wilhoit, Wilhoit & Wilhoit, Grayson, for appellant.

William R. Redwine, Sandy Hook, Ralph N. Walter, Nickell & Walter, West Liberty, for appellee.

STEWART, Judge.

This appeal is by Kentucky Farm Bureau Mutual Insurance Company, hereinafter sometimes referred to as "Kentucky Farm," from a judgment entered against it on the verdict of a jury in favor of J. D. Kitchen in the amount of $5130.13.

The sole question presented in this appeal is whether the operation by J. D. Kitchen of a 1956 Ford automobile, owned by his son, which was involved in an alleged hit-and-run accident, was at the time within the coverage of an automobile liability policy issued by Kentucky Farm.

The policy named appellee, J. D. Kitchen, as the insured and covered a 1953 Plymouth automobile. One of the provisions of the insuring agreement, which appellee seeks to invoke, was to the effect that its terms extended to "an automobile while temporarily used as a substitute for an insured automobile * * * when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction * * *."

An issue was joined on the question of whether appellee on the occasion of the accident, within the meaning of the policy, was temporarily using his son's 1956 Ford as a substitute for the insured 1953 Plymouth. Appellant contends appellee failed to prove the fact of substitution so as to come within the protection of this provision of the policy. Furthermore, it maintains the evidence conclusively shows that the 1956 Ford owned by appellee's son was "available for the regular use of the named insured"; and that, for this reason, an exclusion in the policy, making the policy inapplicable under such kind of use, precluded any recovery under its insurance contract with appellee.

After overruling appellant's motions for a directed verdict, the first of which was made after the completion of appellee's testimony and the other, after all the evidence was in, the trial judge submitted the case to the jury. The jury returned the verdict hereinbefore mentioned. Subsequently, appellant's motion for a judgment n. o. v. was filed and overruled, and this appeal followed.

Our consideration of the evidence in this case leads us to the conclusion that appellant's position must be upheld, namely, that the 1956 Ford automobile, owned by the insured's son and involved in the accident,

was available for the regular use of appellee. We will now recite the pertinent facts in this connection.

Appellee's own testimony reveals that, the latter part of 1961, he left his home in Elliott County and went to work at a location at or near Dayton, Ohio. His son then resided at Zenia, Ohio, where he was employed. Appellee did not take his own car; he drove to his new job in and kept with him his son's car. He remained in Ohio at his work for something like three months and was thrown out of work just prior to Thanksgiving. He kept his son's 1956 Ford with him the entire time he worked in Ohio, driving it at will to and from his job or to such places he chose to go.

He drove this 1956 Ford car back to his home after his job played out in Ohio. His reason for this trip, according to his testimony, was that his son believed he had the car sold. Appellee's son later came down to Elliott County to see about the sale of his car. However, it was soon learned that the prospective buyer would not purchase the automobile; so that the son returned to his work in Ohio, leaving the car with its keys in his father's possession.

In early January, 1962, appellee commenced working in Ashland. He and three of his neighbors agreed that each would rotate in furnishing daily transportation to the job and back to the home of each. Before it became appellee's turn to provide a car, he bought a new battery and a new cable and installed them in his son's Ford. On January 18, 1962, while he and his three neighbors were returning from their work in Ashland, an accident occurred in which one of the occupants was killed and appellee and the other two were injured.

It was brought out that, during the period of time shown, appellee drove the 1956 Ford for any purpose he saw fit without asking his son's permission. Nor did he ever at any time report to his son when he used the car. He was asked this question: "But it was here for your regular use?"

His answer was: "Yeah, I could drive it if I wanted to."

As pointed out in 7 Am.Jur.2d, Automobile Insurance, sec. 106, pp. 415–18, it must be determined from the facts of each case whether the automobile is "available for the regular use of the insured" within the meaning of the policy. Available is defined as "at one's disposal," "accessible," "usable." See Webster's "New International Dictionary, Second Edition."

In the instant case, appellee kept the 1956 Ford of his son continuously in his possession, and also freely used it, from the time he drove it to his job at or near Dayton, Ohio, until he had the accident on January 18, 1962, which wrecked it. This length of time covered approximately four and one-half months. When he and his three neighbors began working at Ashland, it appeared obvious that appellee intended to use indefinitely the 1956 Ford to provide his share of the transportation to and from their jobs. One does not ordinarily buy a battery and a cable, and install these accessories, unless he plans to make *regular* use of the car for which he acquired them. These acts seem to speak undeniably as to his purpose in this regard.

There is no evidence of substance in this case which can be said to establish that the 1956 Ford car, when the accident occurred, was then being driven as a substitute vehicle for the 1953 Plymouth. Furthermore, there is not a shred of proof that the insured vehicle was then withdrawn from service because of a breakdown or, for that matter, because of any other reason. On the contrary, the evidence compels the conclusion that appellee had resolved, a considerable period of time in advance, to use the 1956 Ford car regularly for the transportation needs of himself and his three neighbors on the long journey to and from Elliott County and Ashland. The fact that he got his son's car in good running condition, plus the fact that he had continued driving it for an extensive period of time.

brands as inconsistent his contention that he was temporarily using this car on the occasion of the accident.

 In our opinion it has been conclusively shown that the 1956 Ford of appellee's son was available to the insured for regular use; hence, under the applicable exclusionary provision of the policy, it was not covered by the insuring agreement. This holding negates any claim that the son's car was used at any time as a temporary substitute for the 1953 Plymouth of the insured.

There are other assignments of error urged for a reversal of the judgment but, in view of the conclusion we have reached, we deem it unnecessary to discuss and resolve them.

Wherefore, the judgment is reversed with directions that a new one be entered dismissing the complaint.