**UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Appellant,**

v.

**The TRAVELERS INSURANCE COMPANY, Appellee.**

Court of Appeals of Kentucky.

March 20, 1970.

Robert G. Hunt, King, Deep, Branaman & Hunt, Henderson, for appellant.

William L. Sullivan, Dorsey & Sullivan, Henderson, for appellee.

OSBORNE, Judge.

Appellee, the Travelers Insurance Company (hereinafter called Travelers), insured Norman E. Beck, a service-station operator. Appellant, Universal Underwriters Insurance Company (hereinafter called Univer-

sal), insured W. T. Argabrite, who operated a commercial garage for the repair of motor vehicles. Russell Cline Weaver was one of Argabrite's employees.

Argabrite's service manager sent the employee Weaver to pick up the truck of Beck at the latter's service station for the purpose of delivering it to Argabrite's garage. On the way to the garage, Weaver applied his brakes and slid into the rear of a vehicle driven by Lucille S. Ginger. Mrs. Ginger sued Argabrite and his employee, Weaver, but she did not sue Beck. The record in this case includes the earlier suit of Ginger against Argabrite and Weaver.

Universal settled with Mrs. Ginger by paying her the sum of $25,000. Universal then sued Travelers for $20,000, being the applicable limits of coverage of the Traveler's policy, and also for an additional $2,-339.94 as the expenses of defense and attorney's fees.

Universal alleged that it had issued its "garage liability policy" to Argabrite, but that under the terms of this policy the insurance coverage afforded was "excess insurance" only, and that Travelers was the "primary" insurer. It also alleged that Travelers agreed with Universal at the time the settlement with Mrs. Ginger was consummated that the settlement was reasonable, and Travelers would not contest the reasonableness of the settlement in any lawsuit that might be filed subsequent to the settlement to determine the respective rights and obligations of Universal and Travelers.

Travelers answered that an exclusion in the "garage liability policy" that it had issued to Beck and the fact that its assured had not been sued, relieved it of liability or duty to defend and withdrew from the defense. The trial judge entered summary judgment for Travelers on the subrogation claim of Universal. We affirm.

The circuit court found that the policy of insurance issued to Beck by Travelers "excluded liability for injuries and damages occasioned while the insured motor vehicle was engaged in operations for the named insured by independent contractors and did not afford coverage for injuries and damages arising from the accident on or about April 28, 1965, which gave rise to this litigation."

The issues on this appeal are as follows:

1. Is the exclusionary clause relied upon by the trial court and the appellee Travelers ambiguous when construed in the context of appellee Travelers' entire automobile liability policy?

2. Does appellee Travelers' policy contain conflicting provisions of coverage and noncoverage within the rule requiring that conflicting provisions of an insurance policy be construed in favor of the insured?

3. Is the appellee Travelers estopped to deny coverage under the terms of the policy sued upon in view of Travelers' defense of the original action filed in the Henderson Circuit Court without reservation of rights?

4. Is the appellee Travelers liable to the appellant Universal under the doctrine of "contemporaneous construction"?

5. Was the garageman, whose employee was driving the truck at the time of the collision, an independent contractor as a matter of law?

■ First, we will take up the issue of whether the driver was an independent contractor. The appellant's brief cites Pancake v. Cull, Ky., 338 S.W.2d 391, and then unsuccessfully tries to distinguish it from cases which hold that a real estate broker is not an independent contractor. In the *Pancake* case, at page 392, this court held:

"In the great majority of cases involving negligent operation of a car by a garageman or mechanic in connection with the work for which it has been placed in his custody * * *, the courts have held the owner not liable. This is on the theory that the garageman or

mechanic becomes the bailee of the car as an independent contractor, since the owner is concerned only with the results of the work and not with the detailed manner in which it is carried out." Annotation, 35 A.L.R.2d 804, at 805.

It is stated in 35 A.L.R.2d 804, at 811, that:

"Non liability of the car owner in most cases where damage results from the delivery of his car to or from a garage to which the car has been entrusted for a specific purpose has generally been predicated on the fact that the garage owner has the custody of the car as an independent contractor and bailee, for whose negligence the bailor is not liable. An automobile owner is not liable for damage caused by his automobile when being picked up for transportation to a garage for storage or servicing, or when being returned to the owner, through the negligence of an employee of the garage, such employee being regarded as the servant of the garage operator rather than the car owner." See, also, Stamper v. Jessee, 199 Ky. 324, 250 S.W. 1008.

The fact that the owner has given specific instructions for the car to be driven has been held not to make the owner liable for the negligence of the garage employee or mechanic driving the car. See 35 A.L.R.2d 808.

Appellant's contention that the trial court found that the work was being done for Norman E. Beck, and thus the relationship of an independent contractor did not exist, is without merit. True, the work was being done for Beck, but it was being done for Beck by Weaver as an independent contractor.

Having established that Argabrite was an independent contractor we will now examine the exclusionary clause of Travelers' policy. Appellant argues correctly that an ambiguous contract must be construed in favor of the insured. However the question here is whether the exclusion *is* ambiguous.

Appellant bases much of his argument on the premise that this exclusionary clause is ambiguous and therefore the insured should receive any benefit of the doubt which exists. The first sentence under the title "Persons Insured" reads, "Each of the following is an insured under Part I, except as provided below:" Then follows a list of *persons* who are insured. This list has been divided into 6 groupings which are numbered (1), (2), (3), (4), (5), and (6) and directly below each other in an equal list form. At the conclusion of this list comes the following statement, "None of the following is an insured:" This statement is in reference to the part of the initial sentence of the section, " * * * except as provided below." Under "None of the following is an insured:" there are four designations of people which are listed (i), (ii), (iii), and (iv). The listing designated as (ii), the one on which appellee bases its contention of non-liability, states: "(ii) any person or organization, other than the named assured * * *, with respect to operations performed by independent contractors for the named assured; * * *"

Since it has been determined that Argabrite was an indepedent contractor, we have only to deal with the word "operations." Appellant claims that "operations" does not refer to the actual driving of a car and that therefore the exclusionary clause does not apply to the events of this case. Appellant contends that "operations" refers to "Garage Operations Hazard" in the policy which earlier defined itself as, "The ownership, maintenance, or use of the premises for the purposes of a garage, and all operations necessary or incidental thereto, hereinafter called 'garage operations.'" This very statement seems to refute appellant's charges. The policy states that whenever the policy is dealing with garage operations hazards, it will be specified as "garage operations." Not "operations" but *garage* operations." Appellant contends that the exclusionary clause only refers to garage operations and that the driving of the car in this case was not a garage operation but

rather was an automobile hazard which was specified under the term "Automobile Hazards" and which had no exclusionary clause in the policy which later referred back to it. But by the defined terms in the policy itself it seems clear that "operations" does *not* mean "garage operations."

A further contention of appellant is that the word "operations" does not include the connotation of "driving." This seems to be so only depending upon who is presented with the task of interpretation. The term operation as listed in *Words and Phrases* has a subheading entitled motor vehicles which mentions numerous cases which hold that operation of a motor vehicle includes driving. Appellant cites Maryland Casualty Company v. Marshbank, 3 Cir., 226 F.2d 637, to show that there is a difference between "use" and "operation," but the case goes on to hold that "operation" of a motor vehicle by a man involves his direction and control of its mechanism as its driver for the purpose of propelling it as a vehicle.

Appellant cites State Farm Mutual Automobile Insurance Company v. Shelton, Ky., 368 S.W.2d 734, as holding that the failure of an insurance policy to define some crucial parties involved ("employee," and "domestic") in itself created an ambiguity. However, there is no ambiguity created by using the term "operations" when the policy itself clearly states that "garage operations" means *garage* operations. The cases are distinguishable.

Appellant strongly contends that the "omnibus clause" conflicts with the exclusionary clause in the policy. Appellant contends that if appellee wished to exclude liability where an independent contractor was driving the car while the motor vehicle was otherwise covered under the "ownership, maintenance and use * * *" provision of the policy, Travelers should have stated in its policy that this omnibus clause did not apply while the motor vehicle was being driven by an independent contractor. We believe that this is exactly what appellee did by its exclusionary clause as respects independent contractors.

Appellant also contends that the physical construction of the policy makes it appear that the exclusionary clause only applies to subparagraph (6) under "Persons Insured" and that this in itself creates an ambiguity. Appellant relies upon a quotation from 1 Couch on Insurance, Second, Section 15:13, page 660, which states: "Thus the rule which requires that a limiting clause or phrase which follows several expressions be restricted to the last antecedent governs in the interpretation of a contract of insurance." At first blush this quotation would seem to apply to the case at bar. However, the case cited in support of this point is one in which the policy in question did not have the clauses arranged in vertical, numerical subdivisions as in the case at bar, but in linear, sentence form. We also point out that preceding this quotation is the statement by Couch, that "Although *the construction of a policy according to strict rules of grammar does not prevail over the intent of the parties as shown by the whole instrument,* some consideration is given such rules in construction * * *" (Emphasis added).

The basic premise on appellant's second issue is that the exclusions only related to subparagraph (6). However, this is not so. The wording "None of the following is an insured" refers to the first sentence of "Persons Insured" which states, "Each of the following is an insured under Part I, *Except as provided below:*" (Emphasis added). Although appellant fails to connect these two statements together, clearly they are related and should therefore be read as a whole. Thus, "None of the following is an insured" does refer to "Part I" of the policy also. Together these clauses note exclusions in the "Persons Insured" section of Part I of the policy.

The fact that the language "None of the following is an insured" is not indented but is brought all the way over to the margin of the policy does, contrary to appellant's opinion, indicate a new paragraph rather than a continuation of subparagraph (6). This can be ascertained by reading the pol-

icy as a whole and noting that the physical construction of the policy is such that all new ideas or "paragraphs" begin at the extreme left-hand margin and all continuations or lists which follow an initial statement are indented and placed under that initial statement.

■ The problem of weighing the "escape clause" and the "other insurance clause" of the appellee Travelers' policy and also the "excess insurance" provision of appellant Universal's policy is not relevant to the decision of this case. This "escape clause" is found in paragraph (3) (b) under "Persons Insured." However, it has already been decided that Argabrite was not a "persons insured" under the Travelers' policy because he was specifically excluded by section (ii) under "None of the following is an insured:" and thus this issue is moot.

■ In support of appellant's third issue it cites Fullerton v. United States Casualty Co., 184 Iowa 219, 167 N.W. 700, 6 A.L.R. 367. We believe this case can be distinguished from the case at bar in several respects. In *Fullerton*, U. S. Casualty Company had issued an indemnity insurance policy to Fullerton. Fullerton's son, while driving the car collided with another car and injured a Mr. and Mrs. Hockenberg and a Mrs. Jacobson in the other car. The insurance company took charge of the negotiations and reached a settlement with Mr. and Mrs. Hockenberg, but after a period of negotiations with Mrs. Jacobson and a change of venue the attorneys for the insurance company withdrew their appearance for the defense of Fullerton. The court held at page 704, that, "The company had not only bound itself to assume the defense of 'any claim' against which it undertook to indemnify the plaintiff, but had also carefully excluded him from all right to act independently of the company on the matter of such suit by a provision in the policy * * *. When, therefore, it was notified of the accident and of the claims of the Hockenbergs and Mrs. Jacobson, the company was called upon to act, either to deny that it was under any obligation in the matter, and leave the plaintiff and his son to conduct the defense in their own way and upon their own responsibility for making a defense or settlement, or to itself assume exclusive charge of the matter on part of the assured and defend or compromise as it should find expedient. It accepted the latter alternative, took the business out of the hands of the insured, made its own settlement with the Hockenbergs, and took exclusive control of the defense to the suit of Mrs. Jacobson. Such conduct of the parties was tantamount to an agreement or mutual concession that the policy was intended to cover these claims for damages, and both parties have proceeded on that basis to a settlement with the Hockenbergs, and on to a point midway in the Jacobson suit; the insurer will not be permitted then to change front, abandon a defense it had undertaken, and escape liability on the plea that it has mistaken the nature of its obligation." The differences in the *Fullerton* case and the case at bar seem to be clear: in *Fullerton*, the insurance company had settled two of the three claims against the insured, whereas Travelers had not made any settlement when it originally assumed the defense; the policy in *Fullerton* included a clause which specified that the insurance company was to have *full control* over any legal proceeding whereas appellant mentions no such clause in Travelers' policy; but perhaps the greatest difference can be noted in the statement by the court in *Fullerton* that the insurance company "took exclusive control of the defense to the suit of Mrs. Jacobson." The case at bar presents different facts because here Travelers Insurance Company was being defended by the same attorney that was also defending Universal Insurance Company. Thus it might be said that Travelers was, in effect, uniting itself with Universal and that both companies were equally knowledgeable of the case and since there was only one attorney representing both insurance companies, Argabrite would not be prejudiced by Travelers' later removing itself from the case by a disclaimer of

liability. Essentially the defense of Argabrite would remain the same, the only question which would arise by Travelers' withdrawal would be as to who would have to pay if Argabrite would be held liable.

This question of prejudice is discussed in 167 A.L.R. 245 which states: "The question whether an insurer is liable because of its withdrawal after the assumption of the defense always arises in connection with the claim that the withdrawal was untimely and for this reason resulted in prejudice to the insured * * *. According to the general rule which has the support of all the cases in point, an insurer who withdraws from the defense of an action is estopped to deny liability under the policy if its conduct results in prejudice to the insured; but it is not estopped to do so if its action does not result in any prejudice to the insured * * *. Thus, it was said in Kearns Coal Corp. v. United States Fidelity & G. Co., 2 Cir., 118 F.2d 33, that when the insurer withdraws at such a time and under such circumstances as to leave the insured an adequate opportunity to defend, in order to estop the insurer from denying its liability prejudice to the insured must be shown and mere delay in making the disclaimer is not enough."

Appellant also cites American Casualty Company of Reading, Pa. v. Shely, 314 Ky. 80, 234 S.W.2d 303, on page 30 of its brief. This case can also be distinguished from the case at bar on several points. The court in *Shely* held, "But there the person claiming the estoppel was not prejudiced by the action of the company against whom the estoppel was asserted. One of the basic elements of an estoppel is that the person claiming it must have been prejudiced by the action of the person against whom it is asserted. Generally the courts hold that where an insurance company undertakes the defense of an accident case, the loss of the right by the insured to control and manage the case is itself a prejudice. * * * Here appellant had control of the investigation and defense and did not raise any question as to noncoverage or make

any reservation of rights for almost a year." In the case at bar, Argabrite was not prejudiced by Travelers' withdrawing from the case because the attorney who was conducting the defense of Argabrite remained on the case along with Argabrite's insurer, Universal. Thus, Argabrite did not lose the right to control and manage the case, he simply lost one of the two possible sources of insurance payment which he hoped to receive.

▮ Appellant's fourth issue is tied in very closely with the charge in issue three that because of its defense of the action, Travelers is estopped to deny coverage. Appellant terms this charge, "The doctrine of contemporaneous construction" and says that by this doctrine, Travelers is liable to Universal.

Appellant cites a quotation from 1 Couch on Insurance, Second, at page 743, but fails to note what immediately follows this quotation. "However, if the contract is clear and unambiguous, its interpretation is for the court, and not for the parties, even though they by their acts may have evidenced a construction differing from that evidenced by the written instrument."

To see whether he was insured, a "reasonable man" would look under "Persons Insured," in the body of the policy. There he would note four exclusions to "Persons Insured." The one designated (ii) applies in the case at bar and thus excludes Argabrite from coverage under Travelers' policy.

This opinion represents our honest effort to make detailed answers to the conflicting arguments of the parties relative to the construction of an insurance policy. It would be somewhat ludicrous for us to say this policy is not ambiguous. It is. But no more so than most others. Ambiguity and incomprehensibility seem to be the favorite tools of the insurance trade in drafting policies. Most are a virtually impenetrable thicket of incomprehensible verbosity. It seems that insurers generally are attempting to convince the customer

when selling the policy that everything is covered and convince the court when a claim is made that nothing is covered. The miracle of it all is that the English language can be subjected to such abuse and still remain an instrument of communication. But, until such time as courts generally weary of the task we have just experienced and strike down the entire practice, we feel that we must run with the pack and attempt to construe that which may well be impossible of construction.

The judgment is affirmed.

HILL, C. J., and MILLIKEN, NEIKIRK, PALMORE and REED, JJ., concur.