No. 46,418

RICHARD C. SIMPSON and MARGARET SIMPSON, his wife, Jointly and Individually as Parents and Next Friends of SAMMY SIMPSON, a Minor, *Appellants,* v. KFB INSURANCE COMPANY, INC., FARM BUREAU MUTUAL INSURANCE COMPANY, INC., and JOE BOYER, *Appellees.*

(498 P. 2d 71)

Opinion filed June 10, 1972.

*Walter B. Patterson,* of Fort Scott, argued the cause and was on the brief for the appelants.

*Douglas G. Hudson,* of Fort Scott, argued the cause, and *Douglas Hudson* and *David Mullies,* both of Fort Scott, were with him on the brief for the appellees.

The opinion of the court was delivered by

KAUL, J.: This action involves the "Medical Payments" coverage of four automobile insurance policies issued to plaintiffs-appellants by the defendant insurance companies. The appeal comes before us on an agreed statement of facts.

Sammy Simpson suffered serious injuries in an accident on October 25, 1969, while driving a 1966 Chevelle automobile registered in his name and that of his father, Richard C. Simpson. The

Chevelle was covered by an automobile policy issued by defendant Farm Bureau Insurance Company, Inc., hereafter referred to as KFB, which provided for medical payments in the amount of $500.00.

At the time of the accident, Sammy's parents owned three other vehicles. Each was insured under a separate policy issued by defendant Farm Bureau Mutual Insurance Company, Inc., hereafter referred to as Farm Bureau. Each of the three Farm Bureau policies provides medical payment coverage in the amount of $2,500.00.

According to the agreed statement of the parties, Sammy was eighteen years of age at the time of the accident, the son of plaintiffs, Richard C. and Margaret Simpson, and a resident of their household. It was further stipulated that Sammy's medical expenses totaled $2,468.50.

After pleadings and admissions were filed, the matter was presented to the trial court on plaintiffs' motion for partial summary judgment and defendants' motion for summary judgment. In their motion for summary judgment defendants asked that judgment in the sum of $500.00 and costs be allowed against KFB and that judgment against Farm Bureau and Joe Boyer be denied. Judgment was entered for defendants in accord with their motion and this appeal followed.

In their brief on appeal plaintiffs state the issues in this fashion:

"The sole and only issues are the construction of the medical pay provisions identical in each policy, and whether the letter from Joe Boyer, Branch Claims Manager for Farm Bureau, to plaintiffs' attorney was an unqualified promise to pay by Boyer and Farm Bureau as to said expenses. KFB Insurance Company is not a party to this appeal."

The principal controversy centers around the "Medical Payments" coverage and a certain exclusion related thereto which appears in identical form in the three Farm Bureau policies.

The policies are made up in booklet form consisting of eighteen pages with the declaration as to parties, automobiles, insured, etc., affixed to a back cover page. The policies are divided into three principal sections according to subject matters. They are respectively; "Insuring Agreements"; "Exclusions"; and "Conditions." A second contract or endorsement providing coverage for damages caused by an uninsured automobile appears in the last four pages of the policy booklet.

The heading of each section of the policies is set out in bold print

in caps and each is printed in the same size type. The subject caption of each subsection appears in boldfaced type. We are concerned here with certain provisions appearing under the sections titled "Insuring Agreements" and "Exclusions."

The medical payments coverage appears on page one in the "coverage" subsection of "Insuring Agreements" as follows:

"Coverage C—Medical payments. To pay reasonable expenses of necessary medical, dental, surgical, ambulance, hospital, professional nursing, funeral services and prosthetic devices, all incurred within one year from date of accident to or for;

"(C-1) each person who sustains bodily injury, sickness or disease caused by accident while in or upon, entering into or alighting from;

"(a) the automobile described in the declarations, if the injury arises out of the use thereof by the named insured or spouse if a resident of the same household, or with the permission of either.

"(C-2) each insured who sustains bodily injury, sickness or disease caused by accident, while in or upon, or while entering into or alighting from, or through being struck, by an automobile."

It is readily apparent that C-1 coverage is limited to injuries connected with the automobile described in the policy, while C-2 extends broad coverage to injuries connected with any automobile.

Subsection III of "Insuring Agreements" titled "Definition of Insured," appearing on pages two and three of the policy form, defines the word "insured as related to medical payments" in this fashion:

"(b) with respect to Coverage C-Medical Payments, the unqualified word 'insured' includes the named insured, if an individual, his spouse or relatives of either while residents of the same household."

The real issue is whether Sammy is limited to the $500.00 maximum medical provided under C-1 of the KFB policy on the Chevelle in which he is a named insured or is he also entitled to recover up to an additional $2,500.00 under the C-2 coverage of each of the three Farm Bureau policies on the three separate vehicles owned by his parents.

The "exclusions" appear on pages six and seven, headed by the title, which is followed by the phrase, "this policy does not apply." The specific exclusions are alphabetically labeled running from (a) through (s). The reference to the particular coverage to which the specific exclusion applies appears in bold-faced type. The exclusions pertaining to coverage C-2 appear as (i) and (j) as follows:

"(i) under Coverage C-2, to bodily injury to or sickness, disease or death of an insured sustained while in or upon, or while entering into or alighting

from an automobile owned by any insured as defined in Insuring Agreement III, subparagraph (*b*);

"(*j*) under Coverage C-2, to bodily injury, sickness, disease or death to which coverage C-1 applies."

We are not concerned with exclusion (*j*) which merely provides that if an injured person is covered by C-1 he cannot collect again under coverage C-2. For example, if an insured is injured in the vehicle named in the policy, he is covered under C-1, but excluded from collecting again under C-2. It is conceded that exclusion (*j*) has no application to the case at bar.

Plaintiffs contend there is ambiguity and confusion created by the application of exclusion (*i*) to coverage C-2 so as to make the policies subject to two or more constructions—one allowing coverage and one disallowing coverage and that the construction permitting recovery must be given.

The policies are prepared in a form which has become generally accepted in the insurance industry as the simplest and clearest way to define the coverage provided by the "Insuring Agreements" of a policy, *i.e.*, first, to grant the coverage in broad terms and then to except therefrom or to carve out of the coverage certain specific risks which are not covered and which are specifically excluded from coverage in clearly defined "exclusions" in the policies. This is the plan followed here—broad coverage to any insured injured in any automobile is extended under C-2. Exclusion (*i*) operates to exclude from C-2 coverage, any insured who is an insured in an automobile owned by an insured.

As a relative and resident of the same household of R. C. Simpson, the insured under the Farm Bureau policies, Sammy is an insured under the definition of "insured" set out in subsection (*b*). Since Sammy was injured while in an automobile, it clearly appears that he would be covered under C-2. However, exclusion (*i*) is equally definite. It simply excludes coverage C-2 to bodily injury of an insured (Sammy) while in or upon an automobile owned by an insured as likewise defined in subparagraph (*b*).

The purpose of the insurer is readily apparent. It is willing to make medical payments when an insured is injured while occupying a vehicle which is insured under the policy and when an insured under the policy is injured while occupying a vehicle owned by a third party. It is unwilling, however, to make medical payments to an insured who is injured in another vehicle owned by an insured but not insured under the policy.

Sammy was in the Chevelle. It was owned by Sammy and his father, both were insured under the Farm Bureau policies sued upon. Sammy, as an insured occupying an automobile owned by an insured, is excluded from coverage C-2.

The exclusion being definite must apply unless there is some ambiguity which brings into play the rule that uncertainties are determined strictly against the insurer. We fail to find such an ambiguity. It is true, as in the case of any policy of insurance, a somewhat careful reading of the entire policy is required to make its meaning clear, but upon such a reading it is apparent that no medical payments under C-2 are provided for an insured when he is in an automobile owned by an insured. It must be kept in mind, of course, that exclusion (*i*) specifically relates only to coverage C-2 and has nothing to do with the coverage afforded an insured under C-1. Although ambiguities in the writing of an insurance contract are to be construed in favor of the insured, such rules have no application to language which is clear in its meaning. A review of the principles of contractual construction established by this court is set out in an opinion by Chief Justice Parker in *Kendall Plumbing, Inc. v. St. Paul Mercury Ins. Co.,* 189 Kan. 528, 370 P. 2d 396. We quote a part thereof:

". . . Unless a contrary intention is shown, words used in an insurance contract are to be given a natural and ordinary meaning that they convey to the ordinary mind.

"In the more recent case of *Smith v. Mutual Benefit Health & Acc. Ass'n,* 175 Kan. 68, 258 P. 2d 993, this court cited with approval *Knouse v. Equitable Life Ins. Co.,* 163 Kan. 213, 181 P. 2d 310. In the *Knouse* case we said:

". . . An insurer prepares its own contracts and it is its duty to make the meaning clear and if it fails to do so, it and not the insured, must suffer. (*Liberty Life Ins. Co. v. Guthrie,* supra.) Courts should not be astute to evade, rather than quick to perceive and diligent to apply the meaning of words manifestly intended by the parties (*Gorman v. Fidelity & Casualty Co. of New York,* 55 F. 2d 4); but where a contract is unambiguous it must be enforced according to its terms (*McKellar v. Brubaker,* 160 Kan. 451, 163 P. 2d 358). Where a contract is not ambiguous, the court may not make another contract for the parties; its function is to enforce the contract as made. (*State Highway Construction Cases,* 161 Kan. 7, 166 P. 2d 728; *Watkins v. Metropolitan Life Ins. Co.,* 156 Kan. 27, 131 P. 2d 722; *Movitz v. New York Life Ins. Co.,* 156 Kan. 285, 133 P. 2d 89; *Gorman v. Fidelity & Casualty Co. of New York,* supra.) (p. 216.)'" (p. 532.)

The problem here—as in all similar cases—is to determine whether there is any ambiguity. It is true the policies here seem to insure under coverage C-2 of the "Insuring Agreements" and to

take away some of the benefits under exclusion (*i*). While the exclusions in the policies now before us are not on the same page as the coverages set out in the "Insuring Agreements," they are delineated with equal prominence. The exclusions are in the same size print as the remainder of the policies and are labeled in large type "Exclusions" in the same manner as "Insuring Agreements." An ordinary reader making the most casual inspection of the policies could not miss at least the heading "Exclusions" which is in itself a warning to the policyholder to see what is excluded. The very purpose of an exclusion clause is to exclude risks otherwise covered by general coverage clauses. It is the nature of exclusion clauses to conflict with general clauses in that the former constitute restrictions on the latter. Rather than being repugnant, exclusion clauses are a part of the entire contract and if clear, definite, and unambiguous they must be given effect. In the Farm Bureau policies in the instant case exclusion (*i*) clearly and definitely excluded Sammy as an insured occupying an automobile owned by an insured from coverage C-2.

In asserting ambiguity in the Farm Bureau policies, plaintiffs rely entirely on our decision in *Lavin v. State Farm Mutual Automobile Ins. Co.*, 193 Kan. 22, 391 P. 2d 992. In *Lavin* the insurer had issued three separate policies, each with $500.00 medical payments provisions, covering three separate vehicles, to John Lavin, owner of the three vehicles. Richard Lavin, son of John, was injured while occupying a 1955 Chevrolet, one of the three vehicles. The defendant insurer paid $500.00 medical payments under the policy on the Chevrolet, which Richard was occupying, but denied medical on the other two policies. Richard, through his father, brought suit claiming ambiguity, as in the case at bar, with respect to exclusions from the medical payments coverage.

In coverage C of the Lavin policy, medical coverage was extended in essentially the same scope as that in coverages C-1 and C-2 of the Farm Bureau policies in the case at bar. Exclusion (*i*) (2) in the Lavin policy is the exclusion parallel to (*i*) in the Farm Bureau policies herein. The significant difference between the two policy forms is that in the Lavin policy exclusion (*i*) (2) was followed by (*i*) (3) set out in the *Lavin* opinion as follows:

"'(3) other than the named insured and a relative while occupying any vehicle not insured under Insuring Agreements I or II. . . .'" (p. 26.)

The trial court's ruling concerning the Lavin exclusions is set out in the opinion as follows:

" 'Exclusion (*i*) (2) clearly excludes plaintiff from coverage here. Exclusion (*i*) (3) not only does not exclude plaintiff here, but seems to reaffirm coverage to plaintiff as granted in the insuring agreement. I have spent some time checking law as to whether (1) Is a person who is excluded by any of the exclusionary provisions of a policy unable to recover, or (2) If one exclusionary clause cuts out a plaintiff but another exclusionary clause points in the other direction, is there, then ambiguity so that the doctrine of construction most favorable to the insured comes into play?' " (p. 25.)

The trial court concluded the ambiguity insufficient to restructure the policy. On appeal this court reversed but clearly indicated in the opinion that (*i*) (2) excluded coverage under coverage C but that (*i*) (3) created confusion and ambiguity, so as to require application of general rules of construction.

In the Farm Bureau policies there is no exclusion comparable to (*i*) (3) to create ambiguity as in the Lavin policy; thus, since C coverage would have been excluded in *Lavin* if the exclusion had stopped with (*i*) (2), as indicated in the opinion, the *Lavin* case actually supports the defendants in the instant case.

Plaintiffs claim a forfeiture of premium, citing *Sturdy v. Allied Mutual Ins. Co.,* 203 Kan. 783, 457 P. 2d 34, wherein we held that where uninsured motorist coverage with respect to two automobiles owned by insured is written in a single policy and a separate premium for each automobile is charged insured for the coverage, he is entitled to double coverage since he paid a double premium.

In the case at bar only one vehicle is covered under each policy and only one premium was paid on each policy. Sammy was insured up to $2,500.00 as an insured under each Farm Bureau policy. If he had been injured while occupying any one of the three automobiles he would have received the coverage afforded by that policy; namely, $2,500.00 medical payments. There is no forfeiture of premium situation here such as that appearing in the *Sturdy* case.

Plaintiffs contend the exclusion contradicts the provisions of K. S. A. 1971 Supp. 40-1110 and is therefore unenforceable. Plaintiffs assert the familiar rule that where a policy is issued to an insured in compliance with the requirements of a statute, the pertinent provision of the statute must be read into the policy and no provisions of the policy in contravention of the statute can be given effect. Plaintiffs cite *Canal Insurance Co. v. Sinclair,* 208 Kan. 753, 494 P. 2d 1197.

Plaintiffs fail to recognize that 40-1110 is a permissive statute providing that insurers *may* offer "supplemental coverages or endorsements in connection with liability policies." The last section of the statute reads as follows:

".  .  . The standard provisions as set out in article 22 of chapter 40 of the Kansas Statutes Annotated, or amendments thereto shall not be required in such endorsements.

The statute does not prescribe the extent of any supplemental coverage and thus an insurer may provide such coverage to such degree as desired.

The *Canal* case dealt with a policy issued and filed pursuant to requirements of the Kansas Motor Vehicle Safety Responsibility Act (K. S. A. 8-722, *et seq.*) which mandates provisions thereof with respect to policies filed in compliance with the Act. The *Canal* case is inapposite to the issue raised by plaintiffs here.

Finally, plaintiffs argue that a letter signed by Joe Boyer, agent for KFB and Farm Bureau, constituted an unqualified promise to pay the full amount of the Simpson claim. They claim this letter, addressed to plaintiffs' attorney, binds both Farm Bureau and Boyer personally. They cite the following paragraph in a letter dated February 25, 1970.

"To answer your specific question concerning payment of medical and hospital bills, we stand ready to make payment at any time requested by the insured after the bills have exceeded the $500.00 limit of KFB policy, BC-5972."

The paragraph is the last of a seven paragraph letter in which Boyer explained his denial of coverage under the Farm Bureau policies. In the paragraph preceding that quoted above Boyer write:

"My interpretation of that exclusion would mean that medical coverage on the three policies which you have mentioned would not apply if the injuries were sustained by an insured while he was in a vehicle owned by him or a member of his household.  .  .  ."

In context, the paragraph cited by plaintiffs can only mean that the $500.00 coverage of the KFB policy would be paid as soon as Sammy's bills accrued to that amount. It is thus unnecessary to consider whether Farm Bureau or Boyer personally would be bound if the letter read as plaintiffs contend.

In conclusion we find the trial court did not err in construing the policy and in applying it to the undisputed facts of this case.

The judgment is affirmed.