No. 46,508

DAREOL KRAMER, *Appellant,* v. STATE FARM MUTUAL INSURANCE COMPANY, *Appellee.*

(505 P. 2d 646)

Opinion filed January 20, 1973.

*John A. Bausch,* of Ascough, Bausch, Eschmann, of Topeka, argued the cause and was on the brief for the appellant.

*Raymond L. Dahlberg,* of Great Bend, argued the cause, and *Lee Turner* and *J. Eugene Balloun,* of Turner and Balloun, Chartered, of Great Bend, were on the brief for appellee.

The opinion of the court was delivered by

FOTH, C.: The question in this case is whether a liability insurance policy written on a personal automobile covered the insured while on the job, driving his employer's ¾ ton pickup truck. The answer depends on whether the pickup was a "private passenger automobile" as that term was used in the policy.

Appellant and the insured, Averil J. Fiegi021, were co-employees of the Winterscheidt Milling Company of Seneca, Kansas. On August 18, 1965, they had been working at the company's nearby experimental farm, and were returning to town in the pickup when they were involved in a collision with another vehicle. Appellant, who was a passenger, sued his driver Fiegi021 and the driver of the other vehicle for personal injuries sustained in the collision.

Appellee, which had issued the liability policy in question to Fiegi021, denied coverage and refused to defend. In due course appellant secured a default judgment against Fiegi021 for $25,000, and thereafter commenced this garnishment proceeding against the appellee insurance company. The trial court, after a full hearing,

found no coverage and rendered judgment in favor of the garnishee insurance company. This appeal is from that judgment.

The structure of Fieginer's policy was not uncommon. It insured, under "Insuring Agreement I," his 1959 Ford, the described "owned" automobile. The coverages were: "A," bodily injury liability; "B," property damage liability; "C," medical payments; "D," comprehensive; and "G," collision.

The same coverages were extended under "Insuring Agreement II" to his use of a "non-owned" automobile under conditions to be discussed. A "Definitions" section defined terms used in both Insuring Agreements, and then, by a section on "Exclusions," coverage was withdrawn from each agreement under described circumstances.

The parties are agreed that Fieginer's use of the pickup would come under the liability coverage of Insuring Agreement II (non-owned automobiles) unless it is excluded by the following provision:

"This insurance does not apply under:

. . . . . . . . . . . . . .

"(*b*) Insuring Agreement II under any of the coverages to a non-owned automobile

"(1) while used in an automobile business, or

"(2) while used in any other business or occupation, *except a private passenger automobile* operated or occupied by the first person named in the declarations. . . ." (Italics supplied.)

It is also agreed that the pickup was being used in a "business or occupation" under the exclusionary clause, so there was *no* coverage unless it was a "private passenger automobile."

On this, the crucial issue in the case, the trial court made the following findings:

"7. The 1962 Chevrolet ¾ ton pick-up truck had been ordered by Winterscheidt Milling Company as a 'heavy duty truck' for the primary purpose of carrying cargo. At the special request of Winterscheidt Milling Company, it was equipped with heavy duty tires, four-speed transmission, heavy duty rear springs, heavy duty front springs, and over-load springs. This equipment was requested by Winterscheidt Milling Company because it intended to use the truck principally for heavy cargo hauling.

"8. The load capacity of the pick-up truck was a minimum of 2,980 pounds, since the gross vehicle weight (with load) was 7,000 pounds, and the curb weight was 4,020 pounds, the difference being the load capacity of 2,980 pounds.

"9. The pick-up truck was registered as a commercial vehicle, and Winterscheidt Milling Company purchased truck tags to use on the pick-up truck.

"10. The 1962 Chevrolet ¾ ton pick-up truck was used by Winterscheidt

Milling Company for the primary purpose of hauling cargo. It was never used by female employees, since they did not have the required chauffeur's licenses."

Although there was conflicting testimony on some of these items, appellant does not seriously contend that there was not substantial competent evidence to support each of them, and we accept them as the factual basis for our decision. Appellant's quarrel is with the trial court's finding of the ultimate fact: "12. The 1962 Chevrolet ¾ ton pick-up truck is not a 'private passenger automobile' under the automobile policy." His argument is that the policy is ambiguous on this point; construing it strictly against the insurance company should lead to a finding of coverage.

Our cases are legion holding that where the provisions of an insurance policy are ambiguous the policy is to be construed strictly against the insurer and in favor of the insured. The corollary of this proposition is that an insurance policy, like any other contract, is to be construed to carry out the intent of the parties, giving the language employed its ordinary meaning as it would be understood by a reasonable person in the position of the insured. *Simpson v. KFB Insurance Co.*, 209 Kan. 620, 498 P. 2d 71; *Blue v. Aetna Life Ins. Co.*, 208 Kan. 937, 494 P. 2d 1145; *Gowing v. Great Plains Mutual Ins. Co.*, 207 Kan. 78, 483 P. 2d 1072; *Sturdy v. Allied Mutual Ins. Co.*, 203 Kan. 783, 457 P. 2d 34; *Fowler v. United Equitable Ins. Co.*, 200 Kan. 632, 438 P. 2d 46.

The cases cited by appellant by and large hold that whether the words "private passenger automobile" in an insurance policy are intended and understood by the parties to include a pickup truck is a question of fact, to be determined from the terms of the policy and the design and use of the vehicle. Thus, in one of the principal cases he relies on, a ½ ton pickup was used only for passenger car purposes in going to and from work, occasionally for carrying others, and never for cargo except personal tools. The trial court found that it was a "private passenger automobile," and on appeal the determination was affirmed as being based on substantial evidence. *Detmer v. United Security Insurance Company*, 309 S. W. 2d 713 (K. C., Mo. Ct. App., 1958). The court there described the issue before it as follows (p. 717):

"The ultimate question in the determination of this case is whether or not the implied finding of fact by the trial judge that the plaintiff was riding in a 'private passenger automobile' is without substantial evidence to support it. If, under the policy provision this ultimate issue is one of fact, then since the decision of the trial court is supported by substantial evidence, it should be

approved. On the other hand, if it is sure and clear that the coverage clause, standing alone or in the light of the evidence, excludes this pickup and this accident, then its application becomes a matter of law and plaintiff cannot recover.

"It is our opinion and the cases cited herein support such belief, that in each case the ultimate question to be determined is one of fact—that is, was the automobile within the meaning of the policy, a 'private passenger automobile'? Was it a motor vehicle designed and commonly used for and was it actually being used for transporting passengers? In order to determine this ultimate question, evidence as to the construction of the vehicle, how such vehicle was commonly used, and how it was being used is competent and material."

Similarly, in *English v. Old American Insurance Company*, 426 S. W. 2d 33 (Mo., 1968), whether a pickup was "designed primarily for transporting persons" (the policy definition of "private passenger automobile") was held to be a question of fact, on which plaintiff had failed to make a submissible case. And in *Johnson v. Home Indemnity Company*, 401 S. W. 2d 871 (Tex. Civ. App., 1966), it was held improper to grant summary judgment on the terms of the policy alone—whether the pickup was a "private passenger automobile" was an unresolved question of fact susceptible of proof.

We agree that the issue is one of fact. One cannot say that a pickup, *per se*, either is or is not a passenger automobile. Common knowledge, and evidence introduced in this case, both recognize that today many a pickup is purchased and used exclusively for the transportation of passengers—the only cargo it ever sees is the owner's vacation camper. The "reasonable insured" who borrows such a pickup would certainly be entitled to consider it a passenger automobile. On the other hand, where an identical truck is purchased and used by a commercial enterprise exclusively for the hauling of cargo, it could not reasonably be considered a "private passenger automobile." The employee driving such a truck, on his employer's business, could not reasonably believe he was covered by his personal automobile policy. In between these extremes lies a vast area where the classification of the truck must necessarily depend on the proof, and where the conclusion reached by the trier of fact must be judged on appeal by the customary standard of "substantial competent evidence."

Our only previous consideration of the question supports this conclusion. In *Miller v. Farmers Mutual Automobile Ins. Co.*, 179 Kan. 50, 292 P. 2d 711, a seven passenger "carry-all" type of station wagon was found by the trial court to be a private passenger auto-

mobile. We affirmed that finding as being "amply supported by substantial competent evidence." (Id., at 54.) We observed that, for obvious actuarial reasons, coverage under the usual non-owned automobile clause was not extended to automobiles regularly driven by the insured. We went on to say, "And, with respect to the requirement that the 'other automobile' be a private passenger automobile, the reason is equally obvious. It is common knowledge that the ordinary risk is greatly increased when an insured is driving a truck, bus, delivery, freight or cargo-hauling vehicle." (Ibid.)

In *Miller* (as in *Detmer v. United Security Insurance Company*, supra) the determination was made without the benefit of a policy definition of "private passenger automobile." The ordinary meaning of the words had to do. In this case we are not wholly unaided by the policy provisions. Definitions include:

"*Automobile*—means a four wheel land motor vehicle designed for use principally upon public roads, but 'automobile' shall not include a midget automobile, nor any vehicle while located for use as a residence or premises."

"*Private Passenger Automobile*—means a private passenger or station wagon type automobile."

"*Utility Automobile*—means an automobile of the pickup body, sedan delivery or panel type with a load capacity of 1500 pounds or less."

It is true that the "private passenger automobile" definition is somewhat circular, but it does bring in automobiles of the "station wagon type." More important, however, is the placing of a pickup truck with ¾ ton load capacity or less in a separate category, that of a "utility automobile."

This distinction figures in the policy in determining the conditions under which the coverages under Insuring Agreement I (the owned automobile) are also applicable under Insuring Agreement II to non-owned automobiles. Three categories of coverage under the latter are set out in the policy:

"(1) coverages A and B applies to the use of a non-owned automobile by [the named insured and certain others.]

"(2) division 2 of coverages C and M applies to the use of a non-owned automobile by [the named insured and certain others, under specified conditions.]

"(3) coverages D, D-50, F, G and H applies to a loss to a non-owned automobile provided (*a*) such automobile is a private passenger *or utility automobile* or a trailer as defined herein [subject to certain further conditions]." (Italics supplied.)

Thus in extending a substantial class of coverages the policy clearly recognizes that the term "private passenger automobile"

would not ordinarily be broad enough to include a small pickup, panel truck, etc., so the additional category of "utility automobile" is expressly included. By the same token, where in a different provision the policy speaks *only* of a "private passenger automobile," as in the exception under consideration here, we think it must be intended to exclude a "utility automobile." See *Home Indemnity Co. v. Northwestern National Ins. Co.*, 280 F. Supp. 446 (D. Mont., 1968), where the employment of similar definitions of "private passenger automobile" and "utility automobile," with separate coverages for each, led to the conclusion that a pickup used for business purposes was excluded from coverage under a non-owned automobile clause similar to this one.

We realize that the truck here, while described by the generic term "¾ ton pickup," actually had a load capacity of almost 3,000 pounds. Hence it may not technically have fit the policy definition of a utility automobile, which is limited to a load capacity of 1,500 pounds. We think, however, that if this factor is significant at all it militates in the direction of making the pickup a "truck" rather than a "passenger automobile." Cf. *Miller v. Farmers Mutual Automobile Ins. Co.*, supra.

Finally, appellant suggests that the company has made its own interpretation of the policy by virtue of its manual for agents, containing rules for classification and rating purposes. In the manual, filed with the commissioner of insurance, a private passenger automobile is defined *for those purposes* as "A. an automobile of the private passenger or station wagon type . . . or B. a utility vehicle of the sedan delivery, panel or pickup type with a load capacity of less than 1 ton. . . ." We fail to see how this helps the appellant. Although the company, in rating them for premium purposes, puts passenger automobiles and utility vehicles (including small pickups) in the same classification, it hardly follows that they are the same thing for other purposes. Indeed, the difference between them is expressly recognized in the manual, just as it is in the policy.

In sum, we do not find such an ambiguity in the policy as would require the application of a strict rule of construction against the insurer. The issue of coverage was one of fact, and there was substantial competent evidence to support the trial court's finding.

The result reached renders it unnecessary to consider whether the

failure of the garnishee to settle within policy limits renders it liable for the entire amount of the judgment against Fieginer.

The judgment is affirmed.

APPROVED BY THE COURT.

SCHROEDER, J., dissenting: The court holds that whether a pickup truck is a "private passenger automobile" under the liability insurance policy here in question is ordinarily a question of fact, to be determined from evidence of its intended and actual use. This requires litigation in each and every case where a pickup truck is used under circumstances similar to those in the instant case. With this I cannot agree.

A policyholder should be able to read his policy and know whether he has insurance coverage under the circumstances indicated by the record. If he cannot ascertain whether he is covered while driving a pickup truck, as here, the policy is ambiguous. In this situation the policy is construed against the insurance company and liability is imposed.

In our complex society today courts simply cannot construe insurance policies so that litigation is required to determine coverage in each instance under the circumstances here presented. An insurance company with a legal staff at its disposal can write a contract of insurance in language clearly stating the coverage under the policy. The foregoing construction of the policy here in question would compel insurance companies to clarify ambiguous provisions in their policies of insurance.

FATZER, C. J., joins in the foregoing dissent.