**GRANGE MUTUAL COMPANIES, Appellant,**

v.

**Carter Bertram BRADSHAW III, Administrator of the Estate of Carter Bertram Bradshaw; Wendell Riley; Jerry Sexton; and Thelma Gibson, Appellees.**

Court of Appeals of Kentucky.

Sept. 19, 1986.

Rehearing Denied Nov. 26, 1986.

Discretionary Review Denied by Supreme Court March 3, 1987.

Calvin Randall Tackett, Whitesburg, for appellant.

Gene Smallwood, Jr., Whitesburg, for appellees.

Before GUDGEL, MILLER and WILHOIT, JJ.

WILHOIT, Judge.

The appellant Grange Mutual Companies (Grange) issued two insurance policies to the appellee Thelma Gibson affording her liability coverage on two automobiles which she owned. Both policies contained similar provisions. On the night of July 24, 1981, Mrs. Gibson's son, the appellee Wendell Riley, was involved in an automobile mishap with Carter Bertram Bradshaw [1]. At the time of the collision, Mr. Riley was driving a pickup truck owned by his friend and employer, the appellee Jerry Sexton. Mr. Bradshaw later filed suit against Mr. Riley and Mr. Sexton for injuries he sustained in the accident. Mr. Bradshaw contended that under the terms of the insurance policies issued by Grange to Mrs. Gibson, Grange was liable for any damages assessed against Mr. Riley up to the limits of the policies. Grange's liability was premised on the theory that Mr. Riley was provided coverage by Mrs. Gibson's policies since he was a relative that resided in her household. Grange then filed a declaratory judgment action to determine whether or not it was responsible for coverage. It set forth two basic arguments as to why the policies issued by it did not provide coverage: (1) a pickup truck was excluded under the terms of its policies because it was not a "private passenger automobile" and (2) that since Mr. Riley was allowed the regular use of the pickup truck, it was not a "non owned automobile" under the terms of the policies.

The vehicle in question was described by Mr. Sexton as a four-wheel drive 1978 Chevrolet pickup truck that had straight seats, air conditioning, a manual transmission, and a three-quarter ton (1,500

---

1. Mr. Bradshaw died while this action was pending on appeal. Upon motion, we have sub-stituted his estate as a party to this appeal.

pounds) bed with affixed tool boxes. Mr. Sexton testified that he was a carpenter and stated that while he occasionally used the vehicle for hauling supplies, he "[m]ainly ... just drove it back and forth to work." When asked if he purchased the pickup solely for use in his work, Mr. Sexton answered: "No. I had to have a vehicle to ride. A truck just made more sense." He also stated that the vehicle was available for his wife to drive in the event that she needed it for her personal use.

The record discloses that Mr. Riley was an employee of Mr. Sexton at the time of the accident and that he had been so for about a month prior to the accident. Mr. Sexton testified that the two had been good friends for most of their lives and that as a result, he had allowed Mr. Riley to borrow the truck for his personal use and keep it overnight "3 or 4" times. Mr. Riley testified that he was allowed to keep the truck overnight for his personal use "[a] couple or three times." He stated that on the day of the accident he became sick at work and borrowed Mr. Sexton's truck to go home. Feeling better that night, he used the truck to go driving around and was involved in the accident. He further testified that at the time of the accident, he was not on any business for Mr. Sexton.

The circuit court found that Mr. Riley did not have the regular use of the truck, but was using it with the permission of Mr. Sexton. Therefore, it concluded that the truck was a "non-owned automobile" for purposes of Mrs. Gibson's policies. It also found that the pickup truck was a "private passenger automobile" under the terms of the policies because "in rural areas, such as Letcher County, pickup trucks are commonly used in the same capacity as are private passenger automobiles...." The court concluded that since the pickup truck was being used to haul passengers at the time of the accident, as opposed to being used for hauling cargo or for other business purposes, Grange was liable for coverage. Grange, on appeal, presents the same arguments that it presented before the circuit court, i.e., that the pickup truck was not a "private passenger automobile" and that it

was not a "non-owned automobile" since Mr. Riley had regular use of it.

The liability portions of the policies issued to Mrs. Gibson state as follows:

Persons Insured:

(b) with respect to a *non-owned automobile,*

(1) The named insured.

(2) *any relative, but only with respect to a private passenger automobile* or trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission. . . .

(Emphasis added.) The definitions sections of the policies issued to Mrs. Gibson state as follows:

'non-owned automobile' means an automobile or trailer not owned by *or furnished for the regular use of either the named insured or any relative,* other than a temporary substitute automobile;

'private passenger automobile' means a *four-wheel private passenger,* station wagon or jeep type automobile;

'farm automobile' means an automobile of the truck type with a load capacity of fifteen hundred pounds or less not used for business or commercial purposes other than farming.

'utility automobile' means an automobile, other than a farm automobile, *with a load capacity of fifteen hundred pounds or less of the pick up body,* sedan delivery or panel truck type *not used for business or commercial purposes.*

(Emphasis added.) The policies contain no definition of the word "automobile."

Construing the provisions of these policies, it is clear that Grange will be liable only if it can be determined that the pickup truck was (1) a "non-owned automobile" and (2) a "private passenger automobile." We turn first to the question of whether the pickup was a "non-owned automobile." As the truck was not owned by either Mrs. Gibson or Mr. Riley, the issue is whether it was "furnished for the regular use" of

either of them. Grange contends that the evidence shows that Mr. Riley was furnished the regular use of the pickup under the intended meaning of that term. The term "regular use" is not defined in the policies; therefore, what constitutes "regular use" is a factual question. *See American National Fire Insurance Co. v. Aetna Casualty and Surety Co.*, Ky., 476 S.W.2d 183 (1972); *Kentucky Farm Bureau Mutual Insurance Co. v. Hill*, Ky., 278 S.W.2d 729 (1955). *See also Kentucky Farm Bureau Mutual Insurance Co. v. Kitchen*, Ky., 395 S.W.2d 769 (1965). Whether it was necessary to ask the owner's permission to use the vehicle has been held to be a relevant factor for the factfinder to consider in determining if an automobile was "furnished for regular use." *See Kentucky Farm Bureau v. Hill, supra; see also Kentucky Farm Bureau Mutual Insurance Co. v. Cook*, Ky.App., 590 S.W.2d 885 (1978) (reversed on other grounds in *Kentucky Farm Bureau Mutual Insurance Co. v. Cook*, Ky., 590 S.W.2d 875 (1978).)

■ While there was evidence in the record indicating that Mr. Riley used Mr. Sexton's pickup truck quite often, there is also evidence indicating that Mr. Riley had to ask Mr. Sexton's permission before he used it. In fact, the circuit court found that at the time of the collision, Mr. Riley was operating the pickup *"with the express permission ... of Jerry Sexton ...* and was to return it the next day." It further found that at the time of the collision, the pickup was being used by Mr. Riley "with the *express permission of its owner ...* and was not a vehicle furnished for the regular use" of Mr. Riley. We conclude

that there is substantial evidence to support the circuit court's findings.

■ We now address the question of whether the pickup truck in question was a "private passenger automobile" within the meaning of the policies. The policies state that a "private passenger automobile" includes (1) a jeep type automobile; (2) a station wagon; or (3) a private passenger automobile. Since the pickup truck is not a jeep or a station wagon, the issue is whether it is a private passenger automobile. All the parties agree that the Kentucky courts have not previously decided whether a pickup truck is per se a "private passenger automobile." [2] The appellees argue, however, that since the Kentucky courts have considered a pickup truck to be an automobile under the ordinary and usual meaning of that word, *see Buckingham Life Insurance Co. v. Winstead*, Ky., 454 S.W.2d 696 (1970), the pickup truck here should be considered a "private passenger automobile" under the plain and ordinary meaning of that term since it was being used by Mr. Riley to privately transport a passenger (himself) upon a public highway. Grange, on the other hand, acknowledges that the word "automobile" has a broad definition but it contends that under fundamental insurance law an insurer can define the words used in its policy so as to narrow or restrict the meaning of such words. It asserts that by defining a "utility automobile" as an automobile "with a load capacity of 1500 pounds or less of the pick-up body ... type not used for business or commercial purposes," it has restricted the meaning of the term "private passenger automobile" to exclude a pickup truck since

---

**2.** In *Brown v. Bankers Life and Casualty Co.*, Ky., 531 S.W.2d 488, 489 (1975), it was held that the term "private passenger automobile of the pleasure design" did not include a pickup truck; however, the inclusion of the words "of the pleasure design" make that term more restrictive and, thus, distinguishable. In *Hartford Accident and Indemnity Co. v. Western Fire Insurance Co.*, 196 F.Supp. 419 (E.D.Ky.1961), the federal district court for Eastern Kentucky held that the term "private passenger automobile" standing alone excludes a pickup truck. In *Senn's Adm'x v. Michigan Mutual Liability Co.*, Ky., 267 S.W.2d 526 (1954), the Court held that

a "sedan delivery vehicle" which was purchased and used for commercial purposes was not a vehicle of the "private passenger type" even though used occasionally to haul passengers. We believe that this case is distinguishable since it is obvious that the vehicle there, unlike here, was bought and used *solely* for commercial purposes. In *Life & Casualty Insurance Co. of Tennessee v. Metcalf*, 240 Ky. 628, 42 S.W.2d 909 (1931), it was held that a milk delivery truck which was being used for pleasure driving at the time of the accident was a "private motor driven automobile."

that vehicle would fall under the classification of a "utility vehicle." The question thus becomes whether Grange, in the absence of a provision specifically excluding a pickup truck from the term "private passenger automobile," has unambiguously restricted the meaning of that term to exclude a pickup truck by the use of other language in the policies. Should the policies be found to be ambiguous, the well-known rules of construction require that they must be construed so as to resolve any doubts in favor of the insured. *Wolford v. Wolford*, Ky., 662 S.W.2d 835 (1984); *Universal Underwriters Insurance Co. v. Travelers Insurance Co.*, Ky., 451 S.W.2d 616 (1970).

Several other jurisdictions have considered policies with the same or similar language. In *Ohio Casualty Insurance Co. v. Tyler*, 85 Ill.App.3d 410, 40 Ill.Dec. 846, 407 N.E.2d 77 (1980), the Illinois Supreme Court considered an automobile insurance policy which contained the identical language as the present ones. The Court, finding no ambiguity or uncertainty in the language of the policy, stated:

> The policy expressly defines the term 'utility automobile' to mean an 'automobile ... with a load capacity of fifteen hundred pounds or less of the pickup body, ... not used for business or commercial purposes.' The one-half ton pickup truck Ben Tyler was operating at the time of the accident clearly comes within this definition and was a utility automobile.... It is clear, therefore, that when the policy by its terms specifically and expressly places the pickup type vehicle into the definition of a 'utility automobile,' there is no room for any misunderstanding that it may also fall within the definition 'private passenger' or 'jeep type automobile.' ... It is evident that, read as a whole, the categories of private passenger automobile and utility automobile were intended to be separate and distinct.

*Id.* 40 Ill.Dec. at 848–49, 407 N.E.2d at 79–80. For other cases reaching a similar result, *see Hercules Casualty Insurance Co. v. Preferred Risk Insurance Co.*, 337 F.2d 1 (10th Cir.1964); *Concord General*

*Mutual Insurance Co. v. Hills*, 345 F.Supp. 1090 (SD Me 1972); *Home Indemnity Co. v. Northwestern National Insurance Co.*, 280 F.Supp. 446 (D.Mont.1968); *Cotton States Mutual Insurance Co. v. Hutto*, 115 Ga.App. 164, 154 S.E.2d 375 (1967); *Johnson v. Harper*, 213 Neb. 145, 328 N.W.2d 192 (1982); *Leudemann v. Prudential Property and Casualty Insurance Co.*, 51 N.Y.2d 828, 433 N.Y.2d 423, 413 N.E.2d 362 (1980).

A completely different result was reached in *State Farm Mutual Automobile Insurance Co. v. Durrett*, 472 S.W.2d 214 (Tex.Civ.App.1971). That Court construed an automobile insurance policy with the same provision as those in the present case. Finding that a pickup truck "is a dual or multi-purpose automobile in that it will carry passengers and may at the same time be used as a 'utility automobile' or a 'farm automobile,'" *id.* at 217, the Court stated:

> We find and hold that under the definitions contained in the policy in question that the 1969 Ford Ranger ½ ton pickup truck was a dual purpose motor vehicle designed both for carrying passengers and for transporting goods and was being used as a private passenger automobile and therefore falls within the policy definition of a private passenger automobile. We further find and hold that the policy in question contains no exclusion which would be applicable to the facts of this case.

*Id.* at 219. For cases reaching a similar result, *see Employers Mutual Liability Insurance Co. v. Richards*, 332 So.2d 588 (La.App.1976); *Schilling v. Stockel*, 26 Wis.2d 525, 133 N.W.2d 335 (1965) (court held provisions in policy were ambiguous).

While it appears that a majority of the jurisdictions which have considered the question have concluded that language in an insurance policy such as that contained in the present case unambiguously excludes a pickup truck from being considered a "private passenger automobile," we decline to join this majority. In contrast to the result reached by the majority, we believe the fact that the policies include

in the definition of "private passenger automobile" the very same term of "private passenger automobile" creates at least some ambiguity alone. *See Schilling v. Stockel, supra.* In this state, especially in the rural areas, pickup trucks are frequently used for the purpose of carrying passengers; in fact, to many people a pickup truck is their sole mode of transportation. Notwithstanding the inclusion of the term "utility automobile," we cannot say that these policies are so clear that a person of average intelligence who read them would understand that a pickup truck, when used for the private conveyance of himself or other passengers on the highways, is not a "private passenger automobile." We do not believe that the inclusion of the term "utility automobile" in the policies' definitions clearly and unambiguously conveys to the average reader that a pickup truck is to be excluded from the ordinary and usual meaning of the term "private passenger automobile."

Our feelings are best summed up by the dissenting opinion of Justice Schroeder in *Kramer v. State Farm Mutual Insurance Co.*, 211 Kan. 69, 505 P.2d 646, 650 (1973):

A policyholder should be able to read his policy and know whether he has insurance coverage under the circumstances indicated by the record. If he cannot ascertain whether he is covered while driving a pickup truck, as here, the policy is ambiguous. In this situation the policy is construed against the insurance company and liability is imposed.

In our complex society today courts simply cannot construe insurance policies so that litigation is required to determine coverage in each instance under the circumstances here presented. An insurance company with a legal staff at its disposal can write a contract of insurance in language clearly stating the coverage under the policy. The foregoing construction of the policy here in question would compel insurance companies to clarify ambiguous provisions in their policies of insurance.

We find Grange's policies ambiguous as to whether a pickup truck, when used as in this case for a nonbusiness private conveyance of passengers, is a "private passenger automobile." Accordingly, under the normal rules of construction, *see Wolford, supra,* and *Universal Underwriters, supra,* Grange is responsible for coverage.

The judgment of the circuit court is affirmed.

Further, pursuant to 2.(a) of the Order designating the case as a Special Appeal, the application of CR 76.20 and CR 76.32, as well as other appropriate Rules of Civil Procedure pertaining to further appellate steps, are reinstated effective the date of this opinion.

All concur.