FARMERS COOPERATIVE SOC. NO. 1 OF QUANAH v. MARYLAND CASUALTY CO.

No. 5095.

Court of Civil Appeals of Texas. Amarillo.

Dec. 18, 1939.

Rehearing Denied Jan. 29, 1940.

Williams & Bell, of Childress, for appellant.

Cantey, Hanger, McMahon, McKnight & Johnson and James C. Wilson, Jr., all of Fort Worth, for appellee.

STOKES, Justice.

On the 24th of November, 1937, appellant, Farmers Cooperative Society No. 1, owned and operated a cotton gin at Quanah and was also engaged in the business of selling certain goods, wares and merchandise, among which was gasoline, kerosene and other associated commodities, its gasoline service station being located at the gin. One William D. Boswell was a customer of appellant and, between five and six o'clock in the afternoon of the date mentioned, he went to appellant's place of business with a can or container of approximately five gallons capacity and applied to appellant's agents and servants in charge to purchase a quantity of kerosene, commonly termed coal oil. He was served by one Jim Harrill, a clerk of appellant, who received from Boswell the price of the quantity of kerosene purchased by the latter. By a mistake of some kind, the exact nature of which is not shown by the record, the can or container was filled with gasoline or a mixture of gasoline and kerosene so that the liquid delivered was of much greater inflammable and explosive nature than kerosene. Upon receiving and paying for the liquid, Mr. Boswell carried the same to his home, which was located some 350 yards from the premises of appellant, and about two hours later, his wife, Effie Ann Boswell, in preparation for filling a lamp, poured a portion of the liquid from the five gallon container into a smaller one, intending thence to transfer it to the empty lamp. As it was growing dark, in order to see more clearly what she was doing, before pouring the liquid into the small container, Mrs. Boswell placed another lamp about four or five feet from the container into which she was pouring the liquid and, the liquid being of a much greater explosive nature than kerosene, its fumes or vapors were communicated to the lighted lamp and an explosion ensued. As a result of the explosion Mrs. Boswell's clothes ignited and she was badly burned. The husband, being in the house and observing the perilous condition of Mrs. Boswell, ran to her and succeeded in extinguishing the flames, but in doing so he inhaled flames, gases and vapors which irritated his throat and lungs so that he immediately became very ill. Pneumonia developed in two or three days and Mr. Boswell's death followed in about a week.

Appellant, at the time, was carrying a policy of indemnity insurance which had been issued by appellee, termed "Manufacturers' Public Liability Policy", by which appellant was insured against loss from liability imposed by law upon appellee on account of bodily injuries and death accidentally suffered by persons not employed by appellant, with certain exceptions and under conditions specified in the policy which will hereinafter be discussed.

On the 4th of March, 1938, Mrs. Boswell filed a suit against appellant in the district court of Hardeman County for damages occasioned by the alleged negligence of appellant in delivering gasoline or other similar explosive liquid to her husband instead of kerosene which he had purchased. On the same day, March 4, 1938, Mrs. Boswell for herself and as next friend for L. B. Boswell, a minor son, joined by Mattie Helms, a feme sole, and a number of other adult children, filed another suit of the same nature against appellant and on the 11th of October, 1938, judgments were rendered in these causes of action in favor of Mrs. Boswell and some of the other plaintiffs.

On December 28, 1937, after being notified of the explosion and the death of William D. Boswell, appellee made an investigation and notified appellant that, under the terms of its policy, it was not liable to appellant and would not accept the defense of the two suits that had been filed by the Boswells against appellant. Appellant itself thereupon undertook the defense of the suits and on October 11, 1938, the entire controversy, including both suits, was settled by an agreement and compromise between the parties, which resulted in the judgments of that date which were for the total sum of $1,539 in favor of the plaintiffs. In defending the suits, appellant was subjected to an expense of attorney's fees and court costs and it paid the judgments and the attorney's fees and court costs amounting in the aggregate to $2,403.74.

On November 17, 1938, appellant filed this suit against appellee to recover upon the policy of indemnity the amounts paid by it in discharging the judgments and the attorney's fees and court costs in the former suits. The case was tried by the court without the intervention of a jury on the 14th of December, 1938, and resulted in a judgment in favor of the appellee and denying appellant any relief.

The controlling issue in the case as presented by the briefs involves the question of whether or not appellee, under the terms of the indemnity policy, was obligated to appear and defend the two suits filed by the Boswells and to pay the judgments entered therein. If, by the terms of the policy, appellee bound itself to perform that duty on behalf of appellant, the judgment of the trial court is erroneous. On the other hand, if the provisions of the policy are such as not to cover the kind of suits filed, or the nature of the claims asserted by the Boswells, or if those suits and claims fall within one or more of the exceptions made by the provisions of the policy as being those not included in its general terms, then appellee was not obligated to appear and defend the Boswell suits nor to pay the judgments that were entered therein and the judgment of the trial court must be affirmed.

The general insuring clauses of the policy provide that in consideration of the premium paid, appellee would insure appellant against loss from liability imposed upon it by law for damages, either direct or consequential, on account of bodily injuries, including death resulting therefrom, accidentally suffered or alleged to have been suffered by any person not employed by appellant while upon the premises or upon the sidewalks or other ways immediately adjacent thereto provided for the use of employees or the public, occupied by appellant in the conduct of the business and at the places named in Item IV(a) of the Schedule of statements in the policy. This clause contained a parenthetical provision which extended the situs of such injuries to places elsewhere than the premises of appellant, "if caused by employees of the assured engaged as such in said business and at said place, but who are required, in the discharge of their duties, to be from time to time at other places; provided such bodily injuries or death are suffered as the result of accident occurring within the term of this insurance * * *."

Under Sub. VI, a number of obligations which appellant may assume or which may be imposed upon it by law, are specified as being those which are not covered by the policy. Among them is No. 6 which specifies as an exception, or one not covered by the policy, "any accident caused directly or indirectly by the consumption, use, installation, removal, repair, change or demonstration elsewhere than upon the premises own-

ed by or under the control of the assured and described in IV(a) of the Schedule hereof, of any goods, articles, or product, manufactured, handled or distributed by the assured."

The rule of law is well established that where the language used in an insurance policy is plain and unambiguous the courts must enforce the contracts as made by the parties. Such policies or contracts of insurance should be construed most favorably to the insured, but they must not be so construed as to substitute a new contract for the one made in plain and unambiguous language by the parties themselves. Maryland Casualty Co. v. Hudgins, 97 Tex. 124, 76 S.W. 745, 64 L.R.A. 349, 104 Am.St. Rep. 857, 1 Ann.Cas. 252; Continental Casualty Co. v. Wade, 101 Tex. 102, 105 S. W. 35; United States Fidelity & Guaranty Co. v. Baldwin Motor Co., Tex.Com.App., 34 S.W.2d 815, and authorities there cited.

The policy here involved insured appellant against loss from liability imposed by law upon it for damages, either direct or consequential, on account of bodily injuries or death resulting therefrom accidentally suffered or alleged to be suffered by any person or persons not employed by appellant while upon the premises or sidewalks adjacent thereto. It confined such accidents to the premises named in the policy except at places where injury or damage may be caused by employees of appellant engaged as such in the business at Quanah but who were required, in the discharge of their duties, to be from time to time at other places. It bound appellee to defend suits against appellant to enforce such claims although they may be groundless. Appellant contends that the policy covered and bound appellee to defend it against the suits and claims asserted by Mrs. Boswell and her children because, it says, the accident which resulted in the death of William D. Boswell, the husband and father, really happened upon appellant's premises. It contends in this connection that the word "accident" implies more than that which happened at the very time of the explosion in the home of William D. Boswell. It asserts that the word has a broader meaning and encompasses all the facts and circumstances that transpired not only at the time of the explosion but the causes which brought it about. It contends, therefore, that the real accident consisted in the negligent delivery, on the premises of appellant, of gasoline instead of kerosene to William D. Boswell when he applied at appellant's place of business to purchase kerosene. The import of appellant's claim in this respect is tersely illustrated by appellant in a quotation from an early Kentucky case wherein it is said that "where one, standing on a scaffold, unintentionally lets a brick fall from his hand, and it strikes a person below. Here the dropping of the brick, as it was not intended by the former, and was unforeseen by the latter, is, in the broadest sense, an accident." Hutchcraft's Executors v. Travelers' Ins. Co., 87 Ky. 300, 8 S. W. 570, 12 Am.St.Rep. 484.

The reasoning is, therefore, that, because the employee of appellant at its place of business made a mistake and delivered to Mr. Boswell gasoline instead of kerosene, and that the substitution was unintentional and unknown by any of the acting parties, and since Mr. Boswell took the gasoline directly to his home and the injury to him and his wife resulted in her efforts to place some of the liquid in a lamp, the accident consisted of the accidental and unintentional substitution of gasoline for kerosene at the premises of appellant. We cannot go along with appellant in this analysis. It is true that many definitions of "accident" are found in the decisions and text books. The variation in them usually is governed by the circumstances which brought about the casualty or catastrophe involved. It has been said that "accident" is a synonym of "casualty" and in its use in connection with insurance, it generally is held to import a casualty or misfortune resulting in injury or damage. Webb v. Baldwin, 165 Mo.App. 240, 147 S.W. 849; McCarty v. New York & E. R. R. Co., 30 Pa. 247; Eaton v. Glindeman, 33 Idaho 389, 195 P. 90.

It is also true that, when used without restriction or qualification in contracts, although they be contracts of insurance or indemnity agreements, the meaning of the word is broader than the restricted definition of an event happening suddenly and violently. Globe Indemnity Co. v. Banner Grain Co., 2 Cir., 90 F.2d 774.

It may be that the unintentional substitution of gasoline for kerosene, when Boswell called for and purchased the latter, could be termed an accident in that it happened unintentionally and without design of any of the parties involved, but nothing in the nature of a casualty or injury resulted from the

mere delivery of the liquid at the filling station or premises of appellant. That incident was completed and closed when the substance was delivered by the employee of appellant and received by Mr. Boswell. There was no unbroken sequence continuing from the delivery of the liquid to the explosion which occurred at the Boswell home two hours later. If Mr. Boswell had deposited the gasoline in the garage or other store room at his home and no effort had been made to utilize it for a year or two years, it would be fatuous to suggest that when it ultimately was poured into a lamp or other container, although a year or two years after its delivery, an explosion that resulted could be called an accident which happened upon the site of its purchase two years before. If appellant is correct in its reasoning, the time that may elapse between the delivery of the liquid and the explosion would not destroy the nature of the catastrophe nor determine whether or not it was an accident that happened at the premises where it was delivered.

Sec. VI of the policy, eliminating the words contained in it that are not material here, provides as follows: "This policy does not cover: * * * (6) any accident caused directly or indirectly by the * * * use * * * elsewhere than upon the premises owned by or under the control of the assured * * * of any goods * * * handled or distributed by the assured."

Appellant makes the contention that the "use" of the liquid purchased by Mr. Boswell began upon the premises of appellant at the filling station where it was delivered to Mr. Boswell for use at his home. This contention, like that concerning "accident", which we have discussed, cannot be sustained. The policy plainly provides that it does not cover accidents caused by the use of goods handled by appellant elsewhere than upon its premises. Manifestly Mr. Boswell intended to use at his home the kerosene which he thought he was purchasing at appellant's filling station. It would be indeed an unusual extension of the common acceptation of the word "use" to say that Mr. Boswell began using the liquid when he purchased it. The contraction and quotation we have made of the sixth exception contained in Sub. VI of the policy shows clearly, we think, that the parties agreed, when the policy was written, that appellee would not be liable to appellant for an accident nor to defend a suit filed against it upon a claim of the nature involved in the two suits filed by the Boswells, based upon the use which was made at his home of the commodity purchased by Mr. Boswell at appellant's place of business.

The next contention made by appellant is that the insuring clause of the policy covers the injuries sustained by Mr. Boswell and his wife wherein it provides that appellee would insure appellant against loss from liability imposed by law upon it for damages, direct or consequential, on account of bodily injuries, including death resulting therefrom, accidentally suffered or alleged to have been suffered by any person not employed by it while upon its premises "and elsewhere if caused by employees of the assured engaged as such in said business and at said place, but who are required, in the discharge of their duties, to be from time to time at other places." The contention in this respect is based upon the facts revealed by the record to the effect that appellant had in its employ one Oscar Burch whose regular duty consisted of driving a truck to Wichita Falls and back, transporting gasoline and kerosene, and at times when he was not busy with the truck he was in attendance at the station on the premises of appellant. Appellant contends, therefore, that, even though it is held that the accident did not occur on the premises of appellant as provided by the policy and that the use of the gasoline was not made upon the premises as further provided therein, it was caused elsewhere by Oscar Burch who was required, in the discharge of his duties, to be from time to time at other places. In other words, the contention is that the allegations of the plaintiffs' petitions in the two suits filed by the Boswells alleged that the act of negligence causing the injuries happened upon the premises of appellant; that the evidence supports these allegations and that such negligence was that of Oscar Burch who, the record shows, had made a trip to Wichita Falls and returned with a load of gasoline or kerosene on the day the accident occurred. That, inasmuch as Oscar Burch was an employee whose duties required him from time to time to be at other places, and the gasoline was substituted in the tanks on the premises of appellant for kerosene, the accident and injury come within the quoted provision of the policy.

■ We cannot accede to this contention. The insuring clause of the policy limits accidents and injuries covered by it to those which happen upon appellant's premises. The clause last referred to is in parenthesis and merely extends the situs of certain accidents and injuries from appellant's premises to places where the truck driver may necessarily go in the discharge of his duties if, in the discharge of those duties at such places, accidents and injuries otherwise covered by the policy at the premises of appellant should be caused by him.

■ The policy here involved is one of indemnity. It bound appellee to defend suits for damages arising from causes and under conditions specified in the policy. It has been held, and is a well established rule, that the insurer under such a policy cannot be called upon to defend a suit against the insured in which the petition upon its face alleges a state of facts not covered by, but excluded from, the provisions of the policy. The petitions in the Boswell cases clearly revealed a state of facts that were not covered by the policy held by appellant. The accident occurred, not upon appellant's premises or sidewalks or ways connected therewith as provided by the policy, but occurred at the home of William D. Boswell, which, the record shows, was 350 yards away. The use of the commodity purchased by Mr. Boswell began when Mrs. Boswell undertook to fill the lamp at their home. It was not such an accident as happened or was caused by the employee, Oscar Burch, in the discharge of his duties elsewhere than upon the premises and appellee, therefore, was not required under the terms of its policy to defend the Boswell suits nor to pay off the judgments rendered therein. United States Fidelity & Guaranty Co. v. Baldwin Motor Co., Tex.Com.App., 34 S.W.2d 815; Maryland Casualty Co. v. Texas Fireproof Storage Co., Tex.Civ.App., 69 S.W.2d 826.

From what we have said it is obvious that, in our opinion, appellee was not liable to appellant in any sense whatever and that the judgment entered by the trial court was the correct one. Appellant's assignments of error are, therefore, overruled and the judgment of the court below will be affirmed.