(No. 45056.—

BERNARD COBBINS, Appellee, v. GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION, LTD., *et al.*—(General Accident Fire & Life Assurance Corporation, Ltd., Appellant.)

*Opinion filed November 30, 1972.*

GOLDENHERSH, J., dissenting.

HINSHAW, CULBERTSON, MOELMANN, HOBAN & FULLER, and RICHARD C. BLELOCH, both of Chicago (D. KENDALL GRIFFITH, of counsel), for appellant.

WILLIAM S. KECK and HERMAN & TANNEBAUM, both of Chicago (SIDNEY Z. KARASIK, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

The overall issue in this case is whether there is insurance coverage for the insured, M. Fingerhut, d/b/a Coral Stores, assuming the truth of the allegations of the plaintiff's declaratory judgment complaint that in the operation of Coral Stores, Fingerhut negligently sold fireworks to the plaintiff, who subsequently suffered injury therefrom, while away from the store premises.

The plaintiff, Bernard Cobbins, 11 years of age, bought fireworks from the defendant, Fingerhut. Under the provisions of section 12 of the Fireworks Regulation Act (Ill.Rev.Stat. 1963, ch. 127½, par. 112), it was unlawful to sell fireworks to a child under the age of 12

years without the consent of the child's parents. The plaintiff took the fireworks (sparklers) to his yard, lit them, and suffered burns when a spark ignited his shirt.

The plaintiff sued Fingerhut in the circuit court of Cook County, alleging negligence on his part in the sale of such sparklers. Fingerhut tendered the defense to General Accident Fire & Life Assurance Corporation, Ltd. under his "Owners', Landlords' and Tenants' Liability Insurance Policy." General Accident refused to defend, and the plaintiff then brought this action seeking a declaration that General Accident was obligated under the provisions of the policy to defend and to pay any judgment recovered against Fingerhut. In his answer, Fingerhut joined in this prayer. The trial court held that there was no coverage under the policy for the liability sought to be imposed and granted General Accident's motion for summary judgment. Upon appeal, the appellate court reversed and remanded the judgment and held that there was coverage under the policy. (3 Ill.App.3d 379.) We granted leave to appeal.

The insurance policy is the standard type for Owners', Landlords' and Tenants' coverage. Under its provisions, five types of hazards may be insured: (1) "Premises-Operations," (2) "Elevators," (3) "Structural Alterations, New Construction," (4) "Products-Completed Operations," and (5) "Contractual-Specified Types of Agreements." Only the first hazard protection, "Premises-Operations," was purchased by Fingerhut. It clearly appears on the face sheet of the policy that no premiums were paid for coverage against any other type of hazard.

More narrowly, the issue becomes whether under the "Premises-Operations" coverage, there is liability under the facts of this case when the injury in question was suffered by the plaintiff after he left the insured's premises. The defendant, Fingerhut, did not purchase coverage under division 4 hazard—"Products-Completed Operations."

Under the insuring agreements, General Accident agreed to "pay on behalf of the insured all sums which the

insured shall become legally obligated to pay as damages *** caused by accident and arising out of the hazards hereinafter defined." The enumerated hazards are specifically defined:

"Division 1—Premises—Operations.

The ownership, maintenance or use of the premises, and all operations necessary or incidental thereto.

\* \* \*

Division 4—Products—Completed Operations.

(1) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division 1 of Item 4 of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

(2) Operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division 1 of Item 4 of the declarations specifically includes completed operations."

Immediately following the "Definition of Hazards" are the "Exclusions" provisions of the policy, under which Division 4—the "Products-Completed Operations"—is an expressly excluded hazard, if only the division 1 hazard is insured.

While this court has not previously had before it the question of whether a negligent sale of a product, which subsequently injures a person off the premises of the insured, comes within the coverage under division 1—"Premises-Operations"—or under division 4—"Products-Completed Operations"— a number of other courts have considered the identical or substantially similar issue. They have arrived at diametrically opposite conclusions.

One line of cases holds that the "Premises-Operations" hazard applies only to those situations wherein the injury occurs on the premises. (*Smith v. Maryland Casualty Co. (1967), 246 Md. 485, 229 A.2d 120; Bitts v. General Accident & Life Assurance Corp. (9th cir. 1960), 282 F.2d 542; Farmers Cooperative Soc. No. 1 v. Maryland Casualty Co. (Tex. Civ. App. 1939), 135 S.W.2d 1033; Hultquist v. Novak (1938), 202 Minn. 352, 278 N.W. 524.*) The other line of cases holds that there may be recovery under division 1—"Premises-Operations"—notwithstanding that the injury occurs off the premises. *Atkins v. Hartford Accident & Indemnity Co. (1967), 7 Mich. App. 414, 151 N.W.2d 846; Brant v. Citizens Mutual Automobile Insurance Co. (1966), 4 Mich. App. 596, 145 N.W.2d 410; St. Paul Fire and Marine Insurance Co. v. Coleman (8th cir. 1963), 316 F.2d 77; Lessak v. Metropolitan Casualty Ins. Co. (1958), 168 Ohio St. 153, 151 N.E.2d 730.*

The first line of cases adopts the view that the "products" hazard division specifically covers injuries caused by accidents resulting from goods sold if the accident occurs after the possession of the goods has been relinquished to others, and if the accident occurs away from the premises in question. At the same time, such injuries are specifically excluded from the coverage under division 1, for operations on or from the premises. The determining factor for the coverage under the "products" hazard division and, hence, the resulting exclusion under division 1 is not the negligent cause, but the occurrence of the accident itself. Critical to recovery under the "products" hazard division is both the time of the accident as it

relates to possession of the goods, and place as it relates to premises. *Bitts v. General Accident Fire & Life Assurance Corp. (9th cir. 1960), 282 F.2d 542, 543-544.*

The other line of cases is supported by varying rationale: It is the "cause" of the injury that is determinative and the wrongful or negligent sale is the proximate cause. Such sale is the "use of the premises," or an operation incidental thereto, and, hence, there is coverage. Under this rationale the courts have held that since there is no reference in the policy to the place where the accident occurs under division 1, the place of the accident is thus immaterial. (*Lessak v. Metropolitan Casualty Ins. Co. (1958), 168 Ohio St. 153, 158, 151 N.E.2d 730, 734; St. Paul Fire and Marine Insurance Co. v. Coleman (8th cir. 1963), 316 F.2d 77, 80.*) Other courts have found the existence of two "accidents"—the first being the wrongful sale and the second being the resulting injury. By reason of the first "accident" on the premises, the courts have found coverage. *Atkins v. Hartford Accident & Indemnity Co. (1967), 7 Mich. App. 414, 418-419, 151 N.W.2d 846, 848; Brant v. Citizens Mutual Automobile Insurance Co. (1966), 4 Mich. App. 596, 599-600, 145 N.W.2d 410, 412.*

We find the reasoning of the first line of cases more persuasive and realistic in their interpretation of the insurance contract. An insurance contract, like any other, is to be interpreted from an examination of the complete document and not an isolated part. (*Martindell v. Lake Shore Nat. Bank (1958), 15 Ill.2d 272, 283; Chicago Home for Girls v. Carr (1921), 300 Ill. 478, 483.*) In determining whether the "Premises-Operations" hazard includes coverage where an injury results off the premises from a product sold by the insured, it is necessary to read all of the hazard definitions and the specific exclusions together.

When read together, division 1, "Premises-Operations," seems to clearly cover a factual situation which is distinct and separate from division 4, "Products-Complet-

ed Operations." Division 1 covers hazards relating to the premises, such as a person slipping on a loose floor tile, a stock boy dropping a heavy box on a person, or a waitress spilling hot coffee on a customer. The hazards are such that the resulting injury is generally apparent. Division 4 covers hazards not so readily apparent as between the initial act and ultimate result. In part, this division relates to products. As to products, the only requisites to coverage are that the goods were sold (or manufactured, handled, or distributed); that the accident occurred after possession of the goods was transferred to others; and that the accident occurred off the premises. It seems relatively clear that such product-related injuries would include a sale of gasoline, where kerosene was intended, or a sale of acid in a container not suited to hold such product.

Divisions 1 and 4 also relate to operations, the latter being limited to completed operations. An example of this is the partial coverage of a courthouse floor in a demonstration by a floor-wax salesman, after which a person slips and falls on the waxed portion. It was held that in such a situation since the injured person had slipped and fallen the day following the demonstration and sale of the wax to the county officials, the operation was completed or abandoned within the product hazard clause. Since the plaintiff had not purchased insurance covering this hazard, the insurance company had no duty to defend. *U.S. Sanitary Specialities Corp. v. Globe Indemnity Co. (7th cir. 1953), 204 F.2d 774.*

The insurance policy in question specifically excludes coverage under the "Premises-Operations" hazard for injuries arising out of the "Products-Completed Operations" hazard. There is no valid basis for suggesting that the case at bar falls outside of the "Products-Completed Operations" definition. If a "sale" of a product is also deemed an operation incidental to the use of the premises, then it is a "completed operation" when the sale is consummated.

Here a product (sparklers) was sold; the product led to the injury; the accident occurred after the plaintiff obtained possession of the sparklers and after he had removed them to his home. The definition of the "products" hazard does not permit the interpretation that it applies only to the typical product-liability or defective-product case. It is not so limited. The hazard applies to all product related injuries, including the sale of the wrong product or the wrongful sale of a product to a customer so long as the other requisites also are present. If so, then coverage under division 1, relating to premises, is expressly excluded.

Those cases, which rely upon treating a negligent sale as an "accident" in order to find coverage under these circumstances, import to the word something far beyond its normal, popular meaning. In the ordinary affairs of life we would neither call the sale of a product in violation of a statute an "accident," nor reasonably expect others to do so. Such construction seems constrained and labored.

Among the definitions of "accident" in Webster's Third New International Dictionary (1968) are: "an unforeseen, unplanned event or condition."

In *Farmers Cooperative Soc. No. 1 v. Maryland Casualty Co. (Tex. Civ. App. 1939), 135 S.W.2d 1033,* the court had occasion to consider the word "accident" as used in the policy, and at pages 1036 and 1037 stated:

"It is true that many definitions of 'accident' are found in the decisions and text books. *** It has been said that 'accident' is a synonym of 'casualty' and in its use in connection with insurance, it generally is held to import a casualty or misfortune resulting in injury or damage. [Citations.]

It is also true that, when used without restriction or qualification in contracts, although they be contracts of insurance or indemnity agreements, the meaning of the word is broader than the restricted definition of an event happen-

ing suddenly and violently. Globe Indemnity Co. v. Banner Grain Co., 2 Cir., 90 F.2d 774.

It may be that the unintentional substitution of gasoline for kerosene, when Boswell called for and purchased the latter, could be termed an accident in that it happened unintentionally and without design of any of the parties involved, but nothing in the nature of a casualty or injury resulted from the mere delivery of the liquid at the filling station or premises of appellant. That incident was completed and closed when the substance was delivered by the employee of appellant and received by Mr. Boswell."

In *Century Mutual Insurance Co. v. Southern Arizona Aviation, Inc. (1968), 8 Ariz. App. 384, 386, 446 P.2d 490, 492,* the court in construing the insurance policy under consideration, and in determining whether the "accident" there in question occurred at the time of the negligent manufacture of the product or at the time of the resulting injury, stated: "As used in this policy, giving to the word the meaning which a man of average understanding would, we think it clearly implies a misfortune with concomitant damage to a victim, and not the negligence which eventually results in that misfortune." We believe that such construction of the word "accident" is a reasonable, realistic and proper one under the policy in question.

Nor is it an answer to say that since the unlawful sale of the sparklers which occurred on the premises was the proximate cause of the injury, there must be coverage. The unlawful sale might well be a proximate cause of the injury, but if such sale is determined to be within the definition contained in division 4 relating to "products" hazard, then by express exclusion, it was not a part of the division 1 coverage. We deem a negligent sale to be a part of the definition of the division 4 hazard.

A number of courts have reached an opposite conclusion because of a general attitude that most insurance

policies appear to be written in a confusing, unintelligible style. (*Maretti v. Midland Nat. Ins. Co. (1963), 42 Ill.App.2d 17, 27-28.*) This does not, however, justify construing the contract against the insurer when no real ambiguity exists, nor does it justify distorting the meaning of words in order to reach a given result when the words should and can reasonably be given their plain, ordinary and popular meaning. *Dempsey v. Nat. Life & Accident Ins. Co. (1949), 404 Ill. 423, 426; Pioneer Life Ins. Co. v. Alliance Life Ins. Co. (1940), 374 Ill. 576, 590.*

In *Carter v. Nehi Beverage Co. (1946), 329 Ill.App. 329,* the plaintiff, an employee at a wayside lunch stand, was injured by a pop bottle which exploded in her hand. The distributor's insurance policy expressly excluded coverage where injuries resulted from use of a product elsewhere than upon the insured's premises. In holding that there could be no coverage under the policy, the court stated that the exclusion was clear and unambiguous and it could not make a new and different insurance contract for the parties. 329 Ill.App. 329, at 331-332.

The same is true here. Fingerhut could have purchased coverage to protect him from the hazards defined in division 4, relating to products. He did not do so. The cost of this type insurance is determined by the hazards which the policy covers. It would be unfair to General Accident to construe the policy to include coverage which Fingerhut had not purchased and for which the insurer had not been paid.

The exclusionary language is clear. It applies to goods sold if the accident happens after the buyer has possession of the goods, and if the accident happens away from the premises of the insured. We must give meaning and effect to the exclusionary language. Accordingly, the judgment of the appellate court is reversed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I respectfully dissent from the majority opinion and would affirm the judgment of the appellate court. In reaching its conclusion the majority states that "The exclusionary language is clear." The "clarity" of the language is demonstrated by the split of authority reviewed in the majority opinion and the divergence of views expressed by the trial court and the two opinions filed in the appellate court.

The only language in the policy which is clear is the insuring clause of Division 1 set out in the opinion. In interpreting the exclusionary clause in the manner in which it does, the majority demonstrates the accuracy of Judge Biegelmeier's statement in *Farmers Mutual Automobile Ins. Co. v. Bechard (1963), 80 S.D. 237, 122 N.W.2d 86,* wherein he said, "It has been said facetiously of insurance policies 'The front page giveth but the back page taketh away' ", and that of Judge Osborne, writing for the Court of Appeals of Kentucky (*Universal Underwriters Ins. Co. v. Travelers Insurance Co. (1970), 451 S.W.2d 616, 622-623*), who said, "Ambiguity and incomprehensibility seem to be the favorite tools of the insurance trade in drafting policies. *** It seems that insurers generally are attempting to convince the customer when selling the policy that everything is covered and convince the court when a claim is made that nothing is covered. The miracle of it all is that the English language can be subjected to such abuse and still remain an instrument of communication ***."