THE WESTERN CASUALTY & SURETY COMPANY, Plaintiff-Appellee, *v.* DELBERT WALKER *et al.*, Defendants.—(EVERETT J. BLAZER, Defendant-Appellant.)

Fourth District   No. 15658

Opinion filed May 13, 1980.

Ronald L. Carpel, of Carpel & Bourey, Ltd., of Decatur, for appellant.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur (Jerald E. Jackson and Keith W. Casteel, of counsel), for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

An action for declaratory judgment was brought by the plaintiff, Western Casualty & Surety Company, to determine whether there was liability insurance coverage for a personal injury claim that had been filed by defendant, Everett J. Blazer. Blazer claimed that on May 7, 1977, he was injured while working on the demolition of a garage that was located at 2159 East Eldorado Street, Decatur. The garage was attached to a building that housed a tavern. After trial on the declaratory judgment action, the court entered judgment for plaintiff, finding that the liability policy did not apply to the claims made by Blazer. Blazer is the only defendant who has appealed the trial court's judgment. Incidentally, because defendant was a proper party to the declaratory judgment action and has a substantial interest in the viability of the insurance policy, he has standing to bring this appeal. (*General Casualty Co. v. Olsen* (1977), 56

Ill. App. 3d 986, 372 N.E.2d 846, and cases cited therein at 56 Ill. App. 3d 986, 988, 372 N.E.2d 846, 848.) The issue on appeal is whether the trial court erred in ruling that the insurance policy, which was issued to defendant corporation, did not cover the claim that was made by defendant Blazer.

At the hearing on plaintiff's complaint for declaratory judgment, it was established that Delbert Walker had contracted to sell the property on Eldorado Street to defendant Blazer; the property was conveyed on June 6, 1977. At the time of sale, Blazer changed the corporate name from El Rado Inn, Inc., to Delbert Walker Company.

Blazer's accident took place during the one-year term of the owners', landlords', and tenants' insurance policy that had been issued by plaintiff to El Rado Inn in December 1976. This was the only liability policy covering the premises at the time of the accident. Under the provisions that are listed on the front page of the policy, five types of hazards may be insured. Only the first hazard protection, "premises-operations," was purchased by the insured. For each of the other hazards, including "structural alteration, new construction, demolition," the front page of the policy says "NOT COVERED."

The second page of the policy, under the heading "EXCLUSIONS," contains the following:

"This policy does not apply:
* * *

(f) to bodily injury or property damage arising out of structural alterations which involve changing the size of or moving buildings or other structures, new construction or demolition operations performed by or on behalf of the named insured, but this exclusion shall not apply if insurance is specifically indicated in item 3 of the declarations of this policy to apply to such hazards."

Blazer argues that the demolition exclusion that is contained on page 1 of the policy is qualified by the provision on page 2 of the policy. Blazer submits that the exclusion from coverage applies only when the demolition is "performed by or on behalf of the named insured."

In support of its position that the trial court did not err, plaintiff points out that demolition, structural alteration, and new construction were excluded specifically on the first page of the policy and that no premiums were charged or paid for such coverage. Plaintiff, citing *Cobbins v. General Accident Fire & Life Assurance Corp.* (1972), 53 Ill. 2d 285, 290 N.E.2d 873, argues that the exclusionary language on page 1 clearly establishes that there was no coverage for the demolition done by Blazer.

In *Cobbins,* the insured did not purchase "Products-Completed Operations" coverage, as indicated on the face of the liability policy. The

supreme court held that the young boy who was injured by the fireworks that had been sold by the insured, but that were detonated away from the insured's premises, was not covered by the policy. The statement on the face sheet that no premium had been paid for that particular hazard was controlling. In so holding, the court recited the following basic propositions: (1) an insurance contract should not be construed against the insurer when there is no real ambiguity in the policy, and (2) meaning and effect must be given to clear, exclusionary language. (53 Ill. 2d 285, 293-94, 290 N.E.2d 873, 878-79.) It is unclear, however, whether the policy in *Cobbins* contained qualifying language in another portion of the contract, as the policy here.

■■ Because an insurance contract should be interpreted from an examination of the complete document, rather than an isolated part of that document (*Weiss v. Bituminous Casualty Corp.* (1974), 59 Ill. 2d 165, 319 N.E.2d 491), we conclude that this policy unambiguously provides that there is no coverage for demolition work when the work is done by or on behalf of the insured. Since the provision on page 2 makes direct reference to hazards listed on page 1, the policy itself indicates that an exception-from coverage, as stated on page 1 when no coverage has been purchased, should be read with the terms on page 2, which serve to modify the exclusion.

Blazer also argues that the demolition of the garage was not done "by" the insured, and that he, Blazer, was acting in his own benefit as the future owner, not "on behalf" of the insured. Consequently, Blazer concludes, the demolition was a covered activity.

The evidence shows that Walker, as an officer of the insured, neither requested that Blazer demolish the garage nor paid Blazer to so do. Blazer, as the prospective purchaser of the premises, asked Walker if he, Blazer, could tear down the garage. Walker gave his permission since Blazer would be buying the business. Blazer testified, however, that Walker had given him instructions on how to collapse the roof; Walker denied giving any instructions. Blazer also testified that the demolition was done by "mutual agreement" between Walker and himself.

■■ Although the demolition was not done personally by the insured, the evidence supports adequately the conclusion that the demolition was done on behalf of the insured. "On behalf" means in the interest of or for the benefit of another. (Webster's Third New International Dictionary 198 (1961).) Walker gave permission to Blazer pursuant to a mutual agreement, thereby sanctioning the activity. It can be inferred reasonably that the insured corporation would benefit from the removal of the garage, done at Blazer's expense, in the event that the purchase agreement did not go through. Walker apparently was willing to dispose of the garage and, on his authority, the hazardous activity was undertaken.

Therefore it can be said that the demolition was undertaken on behalf of the insured. This conclusion precludes coverage for Blazer's injury.

After the accident, plaintiff sent Blazer a $500 check for medical payments.

An endorsement to the insurance policy entitled "Premises Medical Payments Insurance" provides in part:

> "The company will pay to or for each person who sustains bodily injury caused by accident all reasonable medical expense incurred within one year from the date of the accident on account of such bodily injury, provided such bodily injury arises out of (a) a condition in the insured premises or (b) operations with respect to which the named insured is afforded coverage for bodily liability under this policy."

A separate premium was paid for this coverage.

Blazer submits that the payment is an indication that plaintiff believed that Blazer's injury was covered by the liability policy and that it is impossible to reconcile the payment made with plaintiff's position in this case. We disagree.

The $500 was paid under separate coverage in an endorsement to the insured's policy; the payment was not made under the liability policy.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

MILLS, P. J., and GREEN, J., concur.