**AMERICAN LIBERTY INSURANCE COMPANY, Plaintiff,**

v.

**CITY OF JOLIET, ILLINOIS; Frederick Breen, Chief of Police of the City of Joliet; Fred B. Hafner, Joliet Police Sergeant; Terri Neverman, Teri Ferbend, Richard Klepfer, Fred Fronek, Robert Kerwin, Kevin Cronin, Richard Goepper, Art Huffstudler, and Larry Taylor, Joliet Police Officers; WJRC, Inc., a Delaware corporation; 1986 WJRC Classic Summer Spectacular; Mark M. Jonas; Jack M. Tannehill; and Charles W. Struve, Jr., Defendants.**

No. 88 C 760.

United States District Court,
N.D. Illinois, E.D.

April 20, 1989.

Victor J. Piekarski, Ellyn B. Dorf, Michael Resis, Dennis A. Marks, Querrey & Harrow, Ltd., Chicago, Ill., for plaintiff.

Ronald F. Neville, Walsh, Neville, Pappas & Mahoney, Chicago, Ill., Thomas A. Thanas, Michael R. Phillips, Norma J. Guess, Jeffrey S. Plyman, Joliet, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This case presents an interesting example of how inattention to the words of a contract can thwart a municipality's attempt to shift risks for liability under 42 U.S.C. § 1983 (1982). Cities and counties would be well advised to monitor such arrangements carefully, or else avoid accepting responsibilities for which the law of municipal liability is not well-established.

Before the court is a motion for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P., from American Liberty Insurance Company. Also pending is a motion for summary judgment under Rule 56 filed by the City of Joliet; Frederick W. Breen, Joliet's Chief of Police; and ten Joliet police officers. These motions come in a declaratory judgment action filed by American Liberty under 28 U.S.C. § 2201 (1982). This court has jurisdiction over this suit under 28 U.S.C. § 1332, as American Liberty is an Iowa corporation whose principal place of business in Iowa, while all of the defendants are persons or corporations who are citizens of other states. American Liberty seeks a declaration of its rights and obligations under an insurance contract; if found to be liable under that contract, American Liberty submits that it could owe upwards of $1 million.

The undisputed facts, which essentially mirror the agreed facts in the pleadings, are as follows: American Liberty issued an owners', landlords' and tenants' liability policy (hereafter "OLT policy") to the 1986 WJRC Classic Summer Spectacular in 1986. The Spectacular was a rock concert sponsored by WJRC, Inc., a Joliet radio station,

which was held at Joliet Memorial Stadium. American Liberty's policy named the Spectacular, Canterbury Productions, and the City of Joliet as insureds. The policy was effective for one day: August 17, 1986.

Lots of things can happen in one day, or so Mark M. Jonas, Jack M. Tannehill, and Charles W. Struve, Jr. allege. Jonas, Tannehill, and Struve are the plaintiffs in case No. 87 C 7191 (hereafter the "Jonas suit"), which is also before this court. In their First Amended Complaint,[1] these individuals allege that after having attended the Spectacular, they were unlawfully beaten and arrested by a group of eight Joliet police officers. Thereafter the police took them to a cell at the Joliet police station, where two other officers unlawfully denied them medical attention. Later some of these officers testified against the Jonas plaintiffs at trial, allegedly falsely. The Jonas plaintiffs were acquitted.

The Jonas plaintiffs contend that these actions were the product of a conspiracy among the officers and the unlawful policies of the City of Joliet and Chief Breen. They have filed a complaint which alleges seven counts. Count 1 is a § 1983 claim against the ten officers in their individual capacities. Count 2 is a claim of unlawful conspiracy, also against the ten officers. Count 3 is a § 1983 claim against the City and Chief Breen in his official capacity. In this count, the Jonas plaintiffs allege that the City and Breen proximately caused the officers to deprive them of their constitutional rights by either knowingly or recklessly encouraging such conduct or failing to train the officers properly. Count 4 is a § 1983 claim against Chief Breen in his individual capacity, alleging reckless or grossly negligent indifference to the rights of the Jonas plaintiffs. Counts 5, 6, and 8[2] are state law claims against the ten officers for assault and battery, intentional breach of a duty to render medical aid, and malicious prosecution/false arrest; they include the City and Chief Breen on a respondeat superior theory of liability.

Once the Jonas plaintiffs filed their suit, the City, Chief Breen, and the officers tendered their defense to American Liberty, believing that the company had to defend them under an insurance policy. American Liberty subsequently filed its declaratory judgment action here, seeking rulings that (1) the ten officers are not covered under the policy, as they are not named insureds; (2) the actions alleged are intentional, and thus are outside the policy; (3) the activities alleged were not incidental to the Spectacular, and thus fall outside the scope of American Liberty's policy; and (4) American Liberty is not liable for punitive damages under its policy. American Liberty now seeks judgment on the pleadings;[3] the City, Chief Breen, and the officers want summary judgment and a declaration of their right to demand that American Liberty defend them.[4]

1. The parties to the present motions before this court filed them prior to the Jonas plaintiffs' filing of their First Amended Complaint. The changes reflected in this complaint mooted some of the arguments made in these motions, but not all of them. The court will thus weigh these motions in light of the allegations made in the First Amended Complaint. Consequently, all references hereafter to the "Jonas Complaint" actually refer to the First Amended Complaint.

2. The First Amended Complaint inexplicably omits a Count 7 and jumps to Count 8.

3. American Liberty seeks judgment against all of the defendants. WJRC, Inc. and the Spectacular have never appeared before the court in this matter, nor have they answered. American Liberty has not sought a default judgment, but it can include WJRC and the Spectacular in its current motion. Defendants Jonas, Tannehill,

and Struve have adopted the position argued by the City, Chief Breen, and the Joliet officers in response to this motion.

4. The court points out that the parties have failed to comply with the Local Rules in their filings in this motion. Local Rule 12(e) at the time the defendants filed for summary judgment stated as follows:

With each motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure the moving party *shall* serve and file ... a statement of the material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law, including with that statement references to the affidavits, parts of the record and other supporting materials relied upon to support such statement. *Failure to submit such a statement constitutes grounds for denial of the motion.*

As an initial matter, the court must state which law applies to these motions. Such questions inevitably arise—and are almost as inevitably neglected, for better or worse —in diversity actions, as by their nature they involve actors from different states. Here the parties include Iowa, Delaware, and Illinois corporations; companies doing business in Iowa and Illinois; and persons residing in Illinois. There also is a contract signed by what appear to be Iowa, Illinois, and Delaware citizens to cover risks attending an event in Illinois. Nevertheless, the parties imply in their briefs that Illinois law covers the dispute here; this court will treat this as a stipulation. See *City of Clinton, Ill. v. Moffitt,* 812 F.2d 341, 342 (7th Cir.1987) (parties may stipulate to applicable law, within broad limits).

A second preliminary point, one which places this case and the present motions in context, has to do with an insurer's duty to defend its insured under Illinois law. In an exhaustive description of this duty, the court in *Reis v. Aetna Casualty & Surety Co.,* 69 Ill.App.3d 777, 782–84, 25 Ill.Dec. 824, 828–29, 387 N.E.2d 700, 704–06 (1978) (citations omitted; emphasis in original), wrote:

> In Illinois, a liability insurer in doubt over whether it has a duty to defend its insured, cannot simply stand on the sidelines and wait until the tort action is completed before contesting the question of coverage. In a case where there is potential coverage so that the insurer has a duty to defend, but the insurer believes that it has a valid exclusionary defense, it must either (1) secure a declaratory judgment as to its rights and obligations before or pending trial of the original tort action or (2) defend the tort action under a reservation of rights. Where a duty to defend exists, but the insurer fails to take either course of action, its failure to defend is unjustified....

(Emphasis added). Opposing parties had their own duties under Local Rule 12(f):

> Each party opposing a Rule 56 motion *shall* serve and file ... a concise "statement of genuine issues" setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated....

It is well established in Illinois that the liability insurer's duty to defend a tort allegation is determined by the allegations of the tort complaint. When the allegations of that complaint "state facts which bring the case within, or potentially within, the coverage of the policy, the insurer is from this time on unjustified in not defending the insured." The insurer can safely and justifiably refuse to defend only when the allegations of the complaint *clearly* show that the claim is beyond the policy coverage.

See also *Zurich Insurance v. Raymark Industries,* 118 Ill.2d 23, 41, 112 Ill.Dec. 684, 697, 514 N.E.2d 150, 163 (1987) (insurer's duty to defend determined by comparing the allegations of complaint in underlying action with the language of the policy; complaint that alleges facts within the coverage or potential coverage of the policy triggers duty to defend).

■ Guided by these statements of the Illinois law, the court turns to the disputes raised in the present motions. American Liberty's OLT policy states as follows:

COVERAGE A—BODILY INJURY LIABILITY

COVERAGE B—PROPERTY DAMAGE LIABILITY

[American Liberty] will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of

Coverage A. *bodily injury* or

Coverage B. *property damage*

to which this insurance applies, caused by an *occurrence* and arising out of the ownership, maintenance or use of the *insured premises* and all operations necessary or incidental thereto, and [American Liberty] shall have the right and duty to defend any suit against the *insured* seeking damages on account of such *bodily injury* or *property damage,*

Had the court reached the defendants' summary judgment motion sooner, the court would have dismissed the defendants' motion out of hand.

even if any of the allegations of the suit are groundless, false or fraudulent.... (Emphasis in original). American Liberty first contends that the ten Joliet police officers are not "insureds," and thus the policy does not cover them. The court agrees. By the terms of the policy, where the "named insured"—according to the policy, the person or organization named in the declarations of the policy—"is designated as other than an individual, partnership or joint venture," the "insured" includes "the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of duties as such." As noted above, American Liberty's OLT policy named the Spectacular, Canterbury Productions, and the City of Joliet as insureds. The City is something other than an individual, partnership, or joint venture, so American Liberty's policy covers the City's executive officers, directors, and "stockholders" while they act within the scope of their duties. Conspicuously absent from this list is the insured's employees.

The Joliet police officers make no argument that they are executive officers, directors, or stockholders of the City. Rather, the City on their behalf argues that the OLT policy is "ambiguous" because the City had asked WJRC to get insurance for the police officers in return for the City's promise to provide security at the Spectacular. The City does not explain, however, how an understanding with WJRC changes the language of American Liberty's policy. That policy is unambiguous, and even if the City wanted something different, the court must give effect to the plain language of the policy. See *Dora Township v. Indiana Insurance Co.*, 78 Ill.2d 376, 378, 36 Ill. Dec. 341, 342, 400 N.E.2d 921, 922 (1980) (unambiguous insurance policy read according to plain and ordinary meaning of its terms). This court thus declares that American Liberty's policy does not cover the ten Joliet police officers, as they are not named insureds under the policy.

This ruling greatly reduces the scope of this dispute. This court need now consider American Liberty's obligations only to the City and Chief Breen, in light of Counts 3–8 of the Jonas Complaint. American Liberty contends that its policy does not cover the actions alleged in those counts. It first argues that it is not liable for the torts alleged in Counts 3–8 because of how the OLT policy defines "occurrence": "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." American Liberty contends that the incidents in the Jonas Complaint are not occurrences.

■ Under Illinois law, injuries stemming from assault and battery are not accidental. See *Aetna Casualty & Surety Co. v. Freyer*, 89 Ill.App.3d 617, 619, 44 Ill.Dec. 791, 793, 411 N.E.2d 1157, 1159 (1980). American Liberty's policy thus does not cover the actions alleged in Count 5 of the Jonas complaint. As for the intentional, reckless, and/or negligent torts alleged in Counts 3, 4, 6 and 8, the injuries alleged therein could be "accidental," depending on what the injuries are and what relationship they bear to the tortious conduct. See *Argento v. Village of Melrose Park*, 838 F.2d 1483, 1496–98 (7th Cir.1988) (construing Illinois law—injuries stemming from intentional torts may be accidental if the tortfeasor does not specifically intend or expect them). Counts 3, 4, 6, and 8 do not state anything about the specific intent or expectation of the City or Chief Breen, and the relation of that intent or expectation to the resulting injuries. For example, had the City's policy been one of encouraging excessive force alone, it would stand to reason that the City expected injuries to follow. Had the City's policy been one of encouraging conspiracies to arrest persons falsely, however, one would not reach the same conclusion, as a conspiracy to arrest someone falsely would not lead inextricably to bodily injury. See *id.* at 1498. Counts 3, 4, 6, and 8 allege both of these scenarios, such that this court must conclude that they allege incidents that could be "occurrences."

American Liberty makes a second argument as to Counts 3, 4, 6, and 8, one that is

complex and not fully developed. The essence of this argument is that OLT insurance generally does not cover liability for municipal policies, intentional breaches of a special duty to aid those in custody, or municipal employees' decisions to arrest a person falsely or to prosecute him or her maliciously. American Liberty asks this court to examine its OLT policy in context: it lasted one day, it covered a business described as a "music event," and it protected the premises of Joliet Memorial Stadium only. American Liberty contends that it gladly would have defended the City and Chief Breen from allegations of a slip and fall, but injuries stemming from police practices are quite another matter.

American Liberty could have strengthened its argument and made this court's task easier had it anchored itself in the language of its policy. It is basic contract law that a court starts with the language of the parties' agreement before moving to extrinsic facts—even if the agreement mentions those facts, as this one does. American Liberty's policy covers the City and Chief Breen's legal obligations to pay damages because of "bodily injury ... caused by an occurrence and arising out of the ownership, maintenance or use" of Joliet Memorial Stadium "and all operations necessary or incidental thereto...." As this court has noted, the acts alleged in Counts 3, 4, 6, and 8 may be "occurrences." What remain open are the questions of whether these counts allege "bodily injury" and whether these injuries, if any, arose out of the ownership, maintenance or use of the stadium or operations necessary or incidental thereto.

American Liberty's policy defines "bodily injury" as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." This definition divides the analysis of whether something is a "bodily injury" into two parts:

what injuries are alleged, and when they are alleged to have occurred. In Counts 3, 4, 6, and 8, the Jonas plaintiffs contend:

> As a direct and proximate result of the conduct of the defendants, the plaintiffs suffered serious and permanent physical injury, extreme physical pain, great mental and emotional trauma, anguish, humiliation and insult....

Jonas Complaint, ¶ 20. These are certainly bodily injuries. As for when they occurred, the Jonas Complaint mentions only one date: August 17, 1986.[5] This date was the policy period, and thus the Jonas Complaint alleges injuries in Counts 3, 4, 6, and 8 which fall under the OLT policy's definition of "bodily injury."

The question of whether the injuries alleged in Counts 3, 4, 6, and 8 arose out of the ownership, maintenance, or use of the stadium or operations necessary or incidental thereto is a more difficult one. The defendants do not argue that their actions or those of their employees arose out of the ownership or maintenance of the stadium, so the court will focus on whether the injuries in Counts 3, 4, 6, and 8 arose out of the use of the stadium or operations necessary or incidental to that use. Few Illinois courts have discussed "arising out of" clauses in OLT policies in great detail. One can glean certain principles, however. One is that often it is the place of the "occurrence," and not its cause, which determines in part whether a policy covers the accident. In *Cobbins v. Gen. Acc. Fire & Life Assur.*, 53 Ill.2d 285, 290 N.E.2d 873 (1972), a storeowner sold sparklers in violation of state law to an 11–year–old boy. The boy left the store, lit the sparklers, and burned himself. Faced with a lawsuit, the storeowner tendered his defense to his insurer under an OLT policy which covered liability for the "ownership, maintenance or use" of the store "and all operations necessary or incidental thereto."

---

**5.** This is at odds with the dates given in Exhibits A–C of the First Amended Complaint, which state that the injuries at the stadium occurred on August 16, 1986, with the false arrest and malicious prosecution continuing through August 17, 1986. In their Answer to the First Amended Complaint, the City and Chief Breen acknowledge that the concert took place on August 17, 1986, which leads this court to infer that the dates listed in Exhibits A–C are one day off.

The insurer refused to defend, and the boy sued the insurer for a declaration that the policy required the insurer to do so. The boy argued that the owner's "accidental" sale of the fireworks caused the later accident, and thus the second accident was related to the use of the store. The Illinois Supreme Court disagreed. The court pointed to two supplemental coverages available to the storeowner under the policy, but not purchased by him. These alternatives explicitly covered accidents from goods and completed operations occurring off premises. In light of these additional coverages, the court read the general operations and use clause to exclude coverage for off-premises accidents. *Id.* at 290–92, 290 N.E. 2d 873.

 The policy here is virtually identical to that in *Cobbins.* The OLT policy's coverage clause obliges American Liberty to pay for damages arising out of the ownership, maintenance or use of the stadium, but later the policy excludes bodily injuries falling under its "completed operations hazard." This exclusion deems an operation "completed" at the earliest of:

(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the insured at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury ... arises has been put to its intended use by any person or organization....

Once an operation is completed, if injury occurs off of the premises, American Liberty will not pay damages.

Assuming for the moment that the provision of security for the Spectacular was part of or incidental to the use of Joliet Stadium, the coverage clause and the completed operations exclusion work to exonerate American Liberty from liability for the actions alleged in the Jonas Complaint that occurred off of the stadium's premises. The relevant "operation" is the provision of security for the stadium, at the stadium. Any actions occurring at the stadium, including the arrest of persons, logically would be part of this operation. Any such operation would be over, however, once police subdued a person and took him or her away.

Thus, by the terms of American Liberty's policy, American Liberty is not liable for the alleged unlawful policies stated in Counts 3–4 which produced activities that happened after the Joliet police subdued the Jonas plaintiffs and removed them from the stadium. American Liberty also is not obliged to cover the injuries alleged in Count 6, as the Jonas plaintiffs' claim that the Joliet police intentionally denied them medical care *after* the police transported the Jonas plaintiffs to the Joliet police station. See Jonas Complaint at ¶ 14. Similarly, American Liberty is not obliged to pay damages for those activities alleged in Count 8 that occurred after the Joliet police arrested the Jonas plaintiffs and took them away. This includes the fingerprinting, photographing, and false imprisonment of the Jonas plaintiffs at the Joliet station, the filing of false charges and police reports, and the false testimony delivered at the trial of the Jonas plaintiffs. See *id.* at ¶¶ 15–19, 43, 45–49.

Now for the heart of the matter: did the injuries inflicted at the stadium arise out of the use of the stadium, or operations incidental to that use? American Liberty concedes that a slip or a fall at the stadium would be related to the stadium's use. It also concedes that persons injured in a stampede could likewise recover under its policy, as a stampede would be related to the stadium's use. American Liberty distinguishes these accidents from those stemming from a municipality's policies, which are more related to the "use" of a municipality.

American Liberty's argument would have force had its policy been limited to injuries arising out of the use of the stadium alone. Courts in Illinois and elsewhere construe the words "arising out of" as incorporating a proximate cause requirement: something in the nature of the use must contribute to the injury. See *American Brake Shoe Co. v. Indus. Com.,* 20

Ill.2d 132, 136–37, 169 N.E.2d 256, 258–59 (1960) (construing "arising out of employment" requirement of Illinois worker's compensation scheme; "the fact that an injury occurred at the place of the employment does not prove that the injury arose out of the employment; but it must be shown that the nature of the employment was a contributing proximate cause."); *London and Lancashire Indemnity Co. v. Duryea*, 143 Conn. 53, 119 A.2d 325 (1955) (OLT policy covering injuries "arising out of use" of property does not cover off-premises injuries not proximately caused by on-premises violation of law); *New Hampshire Ins. Co. v. Schofield*, 119 N.H. 692, 406 A.2d 715 (1979) (clause in owners' and landlords' policy excluding injuries arising out of restaurant operations did not exclude injuries on restaurant premises not proximately caused by restaurant operations).

The defendants do not argue that anything inherent in the use of a stadium proximately caused the injuries alleged by the Jonas plaintiffs, and so they concede that these injuries did not arise out of the use of Joliet Memorial Stadium. They focus instead on that part of the OLT policy which covers injuries arising out of "all operations necessary or incidental" to the use of Joliet Memorial Stadium. They argue that in this day and age, security services are necessary and incidental to the use of a stadium. There are only few Illinois cases which have construed the term "incidental" in an OLT policy. In *United States Fire Ins. Co. v. Schnackenberg*, 88 Ill.2d 1, 57 Ill.Dec. 840, 429 N.E.2d 1203 (1981), the court implied that bicycle riding was incidental to use of a home, such that a homeowner's policy covered an accident involving a collision with the insured's bike within a reasonable distance of the insured's home. *Schnackenberg*'s weight is admittedly not great, as the court's implication was not central to its holding.

A more direct construction of the term "incidental" appears in *Fidelity & Cas. Co. v. Napleton Motor Sales*, 5 Ill.App.3d 705, 284 N.E.2d 26 (1972). There the court held that as a matter of law, the maintenance of a horse barn on the premises of an insured automobile dealership and garage was not incidental to the use of the garage. The court thus affirmed a lower court's ruling that an OLT policy did not cover injuries arising out of a pony's bite. The court suggested, however, that had the dealership used ponies for promotional purposes, and had stabled them at the garage for that reason, it may have reached a different result. See *id.* at 707, 284 N.E.2d 26.

Black's Law Dictionary (5th ed. 1979) defines "incidental" as "depending upon or appertaining to something else as primary." Some courts in jurisdictions outside of Illinois find incidental relationships quite readily. In *Beeson v. State Automobile and Cas. Underwriters*, 32 Colo.App. 62, 508 P.2d 402 (1973), aff'd, 183 Colo. 284, 516 P.2d 623 (1973), a young woman and her uncle were preparing to unload carpet from an automobile for use in one of the uncle's apartments. The uncle went to a third-floor room shortly before he wanted to begin unloading, while his niece waited in a car outside. In response to her suggestion, the uncle tossed the keys to the car from the open window of the apartment. The keys struck his niece and injured her.

The niece sued the insurers of her uncle's buildings and his automobiles. The court held that while the accident was not "incidental to" the use of a car, it was incidental to the ownership maintenance, and use of the apartment building, as the niece and her uncle were to be engaged in unloading carpet for maintenance of one of the building's units. *Id.* 32 Colo.App. at 407, 508 P.2d 402. One can distinguish this case from *Automobile Underwriters, Inc. v. Hitch*, 169 Ind.App. 453, 349 N.E.2d 271 (1976), where the court held that sales of homemade reloaded shotgun shells were not incidental to the use of a gas station garage, even though the sales occurred in the garage. As the *Hitch* court pointed out, the case before it was more like *Napleton*, where the complained of activity bore no close relationship to the primary (or at least declared primary) use of the site. See *id.* at 457, 349 N.E.2d 271. See

also *Davis v. Hartford Accident & Indemnity Company*, 48 Misc.2d 135, 264 N.Y. S.2d 335 (S.Ct.1965), order modified, 25 A.D.2d 604, 267 N.Y.S.2d 463 (1966) (use of portable welder from garage to thaw residential water pipes not incidental to garage's operations; different case had person been thawing pipes on a vehicle, even off-premises).

Looking closely at the Jonas Complaint, this court finds allegations that the Joliet police were present at the stadium because of the stadium's use. The eight Joliet officers who allegedly injured the Jonas plaintiffs "were on duty at the stadium" after the concert let out. Jonas Complaint at ¶¶ 9–10. The officers directed the plaintiffs to "leave the stadium at a faster pace...." *Id.* at ¶ 11. There is no allegation that the officers were there for purposes wholly unrelated to the stadium, unlike the ponies which were unrelated to the operations of a car dealership in *Napleton* or the shotgun shells which were unrelated to a garage's operations in *Hitch*. Had the officers chased the Jonas plaintiffs onto the stadium grounds, for example, then one could call the police presence at the stadium non-incidental. Such is not the case here.

This court thus holds that American Liberty's OLT policy covers the City of Joliet and Chief Breen for liabilities stemming from Counts 3, 4, and 8 of the Jonas Complaint, where the City and Breen are alleged to be responsible for injuries at the stadium arising out of police operations incidental to use of the stadium. Nevertheless, the court must insert three cautions. First, as the defendants concede, American Liberty's policy does not obligate it for the punitive damages that could be assessed under Counts 4 and 8. Second, this court has not determined that American Liberty *must* indemnify the City and Chief Breen for damages under Counts 3, 4, and 8. As the Jonas suit develops, several things could result in American Liberty's exoneration. It could be that Joliet officers specifically intended or foresaw the injuries which they allegedly inflicted upon the Jonas plaintiffs. It could be that the officers inflicted these injuries away from the stadium. It also could be that the City or Breen's policies, practices, or customs were such that they were an intervening force, one that broke the chain of proximate causation between the use of the stadium and the Jonas plaintiffs' injuries. Were this chain broken, American Liberty's policy would not cover those injuries. Third, given American Liberty's incentive to obtain certain findings that would result in its exoneration, the City and Chief Breen should think twice about blindly relying on American Liberty to defend them. The court would not be surprised to find conflicting interests among these parties, a conflict which could force the City and Chief Breen to use independent counsel.

In summary, this court declares that American Liberty's OLT policy: (1) does not insure the ten Joliet police officers; (2) does not cover the acts alleged in Counts 5 and 6 of the Jonas Complaint; but (3) may cover certain injuries alleged to have been inflicted at Joliet Memorial Stadium. The court grants judgment on the pleadings to American Liberty against the Joliet police officers, WJRC Inc., and the 1986 WJRC Classic Summer Spectacular. The court further grants summary judgment to the City of Joliet, Chief Breen, and the Jonas plaintiffs in accordance with the above declaration, and orders American Liberty to defend the City and the Chief on Counts 3, 4, and 8 of the Jonas Complaint. All other motions are denied.